IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| DEREK WAYNE MONTEZ, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:09-CV-051 |
| | § | |
| RICK THALER, | § | |
| Director, Texas Dep't of Criminal Justice, | § | |
| Institutional Division, | § | |
| | § | |
| Respondent. | § | |

## REPORT AND RECOMMENDATION
## TO DENY PETITION FOR A WRIT OF HABEAS CORPUS

Petitioner DEREK WAYNE MONTEZ has filed a Petition for a Writ of Habeas Corpus by a Person in State Custody challenging his conviction out of the 251st District Court of Randall County, Texas, for the offense of robbery and the resultant thirty-year sentence.  For the reasons hereinafter expressed, the United States Magistrate Judge is of the opinion petitioner's application for federal habeas corpus relief should be DENIED.

I.
FACTUAL AND PROCEDURAL BACKGROUND

In the late afternoon hours of June 11, 2006, Bobby Stubblefiled, a loss prevention officer for a J.C. Penney's store, noticed a man acting suspiciously and began secretly observing him. (Reporter's Record [hereinafter RR], vol. 3, pg. 23).  While Stubblefield watched, the man took seven "South Pole" brand shirts and one pair of jeans, rolled them up together, and stuffed them down his shorts.  (*Id.*, pg. 23).  The man then left the store without paying for the clothing.  (*Id.*, pg. 28).  Stubblefield followed the shoplifter into the parking lot.  (*Id.*, pg. 29).

As Stubblefield was chasing him, the shoplifter turned around, pulled a box cutter out of his pocket, extended the blade of the box cutter, and stared down Stubblefield. (*Id.*, pg. 30). Stubblefield stopped running, threw up his hands, and said "enjoy it." (*Id.*, pg. 31). As Stubblefield watched, the man turned around, got into the passenger-side backseat of a car that was waiting for him, and left. (*Id.*, pgs. 31-32). Stubblefield noted the licence plate number of the car, returned to the store, called the police, and begin filing out a report of the incident. (*Id.*, pg. 32).

Later that day, police observed petitioner Montez, who generally matched the description given by Stubblefield, in the passenger-side backseat of a car matching Stubblefield's description and with the same license plate number as Stubblefield reported. (*Id.*, pgs. 85, 93-94). In the seat pocket directly in front of Montez was a box cutter matching the description given by Stubblefield of the box cutter used by the robber. (*Id.*, pgs. 136-37). In the floor of the driver-side backseat was one South Pole brand shirt. (*Id.*). Stubblefield later identified Montez as the robber for the police on the day of the robbery and again at trial. (*Id.*, pgs. 36, 102).

A jury found Montez guilty of robbery and sentenced him to thirty years in prison. (*Id.*, pg. 213; RR, vol. 4, pg. 27). The judgment was affirmed on direct appeal. *Montez v. State*, No. 07-07-0193, 2008 WL 55113 (Tex. App.—Amarillo Jan. 4, 2008, no pet.). Montez did not file a petition for discretionary review but did file a state habeas corpus application. That application was denied without written order. *In re Montez*, WR-71,075-01 (denied Dec. 17, 2008). This federal habeas corpus petition followed.

II.
PETITIONER'S ALLEGATIONS

Petitioner contends he is in custody in violation of the United States Constitution and the

laws of the United States for the following reasons:

1.     Police misconduct violated petitioner's constitutional rights.

2.     The trial court did not properly resolve pre-trial matters.

3.     Petitioner did not have a fair and impartial jury.

4.     Petitioner received ineffective assistance of counsel.

5.     Misconduct by the State violated petitioner's constitutional rights.

6.     Misconduct by the trial court violated petitioner's constitutional rights.

7.     Perjured testimony was given at trial.

8.     Petitioner received ineffective assistance of counsel on appeal.

9.     The State engaged in misconduct on direct appeal.

10.    The intermediate state appellate court erred by affirming the conviction.

Each of these points of error has several subpoints.  The Court will address every point and subpoint

in turn.

III.
STANDARD OF REVIEW

Petitioner may not obtain habeas corpus relief with respect to any claim adjudicated on the

merits in the state court proceedings unless the adjudication of the claim resulted in a decision

contrary to clearly established federal constitutional law or resulted in a decision based on an

unreasonable determination of the facts in light of the evidence presented in the state court

proceedings.  28 U.S.C. § 2254(d).  All factual determinations made by a state court are presumed

to be correct; petitioner can rebut such presumption only by clear and convincing evidence. *Id.* § 2254(e). When the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, it is an adjudication on the merits and is therefore entitled to the presumption of correctness. *Harrington v. Richter*, 131 S.Ct. 779, 784, 178 L.Ed.2d 624 (2011).

The state court heard and adjudicated, on the merits, most of the claims petitioner presents in his federal habeas corpus petition. More specifically, the Texas Court of Criminals Appeals denied petitioner's application for state habeas relief without a written order.[1] *In re Montez*, WR-71,075-01; *Harrington v. Richter*, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011). Consequently, petitioner's burden in this Court is significantly heightened in that petitioner cannot prevail even if he shows the state court's determination was incorrect. Petitioner must also show the state court unreasonably applied federal law or made an unreasonable determination of the facts. *Neal v. Puckett*, 286 F.3d 230, 235 (5th Cir. 2002), *cert. denied, Neal v. Epps*, 537 U.S. 1104, 123 S.Ct. 963, 154 L.Ed.2d 772 (2003).

Petitioner has failed to meet this burden. Rather than explaining why the state court's determination was unreasonable, petitioner merely restates the grounds he presented to the state court. He has not established the state court unreasonably applied federal law or made an unreasonable determination of the facts. *See id.* As detailed below, had petitioner claimed unreasonableness by the state court, there is nothing in the record or petitioner's arguments to support such a contention. A review of petitioner's claims confirms this petition should be denied.

---

[1] Petitioner contends in his response to respondent's answer that because the Texas Court of Criminal Appeals denied his habeas corpus application without written order, no state court adjudicated his claims on the merits. (*Reply Brief*, filed Sept. 22, 2009, doc. #27, pg. 6). The Supreme Court has expressly held, however, that even a summary denial of a state habeas corpus application unaccompanied by an explanation constitutes a ruling on the merits. *Harrington v. Richter*, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011).

IV.
## MERITS OF PETITIONER'S ALLEGATIONS

### A. POLICE MISCONDUCT

In his first ground of error, petitioner Montez contends police misconduct violated his constitutional rights. Specifically, petitioner contends the following:

1.   The police failed to give Montez *Miranda* warnings.

2.   Montez was incorrectly arrested because he did not match the suspect description given by the loss prevention officer.

3.   Montez was incorrectly arrested because he was not in flight at the time of his arrest.

4.   The identification procedure employed by the police was impermissibly suggestive.

5.   The police failed to review security camera recordings from the store.

6.   The police failed to question store employees.

7.   The police failed to question security personnel from the mall at which the J.C. Penney's store is located.

8.   The police failed to book as evidence Montez's clothes (that he was wearing at the time of his arrest) as evidence but later used the clothes against him at trial.

### *1.* Miranda *Warnings*

In his first subpoint, Montez states the arresting officer failed to give *Miranda* warnings. (*Memorandum of Law in Support of 2254 Federal Writ of Habeas Corpus*, filed Mar. 20, 2009, doc. #6 [hereinafter *Memo*], pg. 5). At trial, the arresting officer testified he read Montez his *Miranda* rights, and Montez indicated he understood those rights. (RR, vol. 3, pg. 97). There was not, however, any additional evidence offered in support of the officer's testimony.

The purpose of *Miranda* and its requirements is to protect a criminal defendant's Fifth Amendment right to not be compelled to incriminate himself. *See Miranda v. Arizona*, 384 U.S.

436, 439, 86 S.Ct. 1602, 1609, 16 L.Ed.2d 694 (1966). The *Miranda* warnings are meant only as a means to an end—a way to protect a constitutional right, not a constitutional right in and of themselves. *United States v. Harrell*, 894 F.2d 120, 125 (5th Cir.), *cert. denied*, 498 U.S. 834, 111 S.Ct. 101, 112 L.Ed.2d 72 (1990). Therefore, the failure to inform a suspect of the *Miranda* warnings does not, in and of itself, amount to a constitutional violation. *United States v. Smith*, 7 F.3d 1164, 1170 (5th Cir. 1993). The constitutional violation arises only when incriminating statements made by the defendant who has not received the *Miranda* warnings are later used against the defendant at trial. *Duckworth v. Eagan*, 492 U.S. 195, 203, 109 S.Ct. 2875, 2880, 106 L.Ed.2d 166 (1989).

In this case, a police officer testified he did, pursuant to *Miranda*, inform Montez of his rights. (RR, vol. 3, pg. 97). There is nothing on the record indicating the police officer's testimony was false. Rather, petitioner submits nothing more than his own, unsupported allegations as the foundation of his argument. *See Ross v. Estelle*, 964 F.2d 1008, 1011 (5th Cir. 1983). Assuming solely for the sake of argument, however, that the officer did not advise Montez of the *Miranda* warnings, petitioner's claim would still fail. At no point during the entire trial did a police officer testify as to *any* incriminating statement made by the petitioner prior or subsequent to his arrest. Because there were no incriminating statements used against Montez at trial, there was no Fifth Amendment violation even if the arresting officer failed to read petitioner the *Miranda* warnings. *See Duckworth*, 492 U.S. at 203, 109 S.Ct. at 2880. This subpoint of error is without merit.

*2. Sufficiency of the Evidence*

In his second and third subpoints of error, petitioner contends he was illegally arrested because he did not match the description of the robber and was not in flight at the time of arrest.

a. Robber's Description

According to Montez, the initial description of the robber was a white male wearing a grey tee shirt and blue denim jeans. (*Memo*, pg. 6). Montez argues loss prevention officer Stubblefield "never once describe[d] Hispanic male, [sic] blue and white Adiddas [sic] ball cap, cargo shorts, or significant tattoos on calves. Neither [sic] gives height nor weight." (*Id.*).

To the contrary, at trial, Stubblefield testified he told police before Montez's arrest that the robber was a 5'6" to 5'7" male, weighing between 140 and 150 pounds and bearing "significant tattoos on both calves of his legs," wearing a grey tee shirt with blue cargo denim shorts and wearing a ball cap. (RR, vol. 3, pgs. 34, 54). Stubblefield testified at trial that the clothes Montez was wearing at the time of his arrest (including the hat) were the same as the clothes worn by the robber. (*Id.*, pgs. 35-36). Regarding the robber's race, Stubblefield stated he told the officer who arrived at the scene that the shoplifter was Hispanic: "I told them that he was Hispanic." (*Id.*, pg. 58). Stubblefield stated he never told police the robber was white "because he didn't look like a white male." (*Id.*, pg. 81).

Officer Justin Taylor was the police officer who went to the store to take Stubblefield's statement. (*Id.*, pg. 143). Officer Taylor testified the robber's description was a white or Hispanic male, mid-thirties, wearing a white or greyish-colored shirt and denim cargo shorts. (*Id.*, pg. 149). The robber was described as approximately 5'7", weighing approximately 150 pounds, and bearing distinctive tattoos. (*Id.*). Another officer involved in Montez's arrest, Officer Michael Gallegos, testified he remembered the robber's description as wearing a grey tee shirt with "blue cargo type shorts." (*Id.*, pg. 139). He did not remember whether the suspect was described by race. (*Id.*).

In his supporting memorandum, petitioner focuses solely on the description of the robber

given by Officer Eddie Sanders.  (*Memo*, pg. 6).  Officer Sanders testified the description he was given of the robber was a *white* male wearing a grey tee shirt and blue denim jeans.  (RR, vol. 3, pg. 115).  At another point in his testimony, Officer Sanders stated the robber was described as wearing blue shorts, black shoes, and a silver and dark blue ball cap.  (*Id.*, pg. 94).  Officer Sanders stated, in response to the question of whether Montez was white or Hispanic, "I'd say he's white, but the name 'Montez' does have a Hispanic origin."  (*Id.*, pg. 118).

When he was arrested, the police report indicated Montez was 5'7" and weighed 150 pounds.  (*Id.*, pg. 106).  The officer noted he had "sock" tattoos, i.e., tattoos extending up the calves of his legs.  (*Id.*, pg. 107).  Evidence admitted at trial established Montez was wearing a plain grey tee shirt, denim cargo jean shorts, and a navy and white Adidas cap at the time he was arrested.  (*Id.*, pg. 18).

### b.  In Flight

Petitioner additionally contends he was not fleeing at the time of his arrest and did not have the stolen shirt and box cutter in his physical possession.  (*Memo*, pg. 6).  At trial, Stubblefield testified the robber got into the back, passenger-side seat of a small red, four-door car with the license plate number Z81-YKY.  (RR, vol. 3, pgs. 32, 34).  Two other people were in the front seat of the vehicle.  (*Id.*, pg. 32).  Officers Sanders and Gallegos testified Montez was riding in the back passenger-side seat of a red, four-door Grand Am at the time of the arrest, which was less than two hours after the robbery.  (*Id.*, pgs. 41, 93, 133-34).  Two other people were in the front seat of the car.  (*Id.*, pgs. 92, 134).  The car's license plate number was Z81-YKY.  (*Id.*, pgs. 93, 132).

Officer Sanders stated he was not the officer who initially discovered the box cutter in the seat pocket, but that he did observe the South Pole tee shirt in the seat behind the driver.  (*Id.*,

102).  Officer Gallegos testified he retrieved the box cutter from the pocket and photographed it. (*Id.*, pgs. 136-37).  He also saw and photographed the South Pole tee shirt in the backseat of the car. (*Id.*, pg. 136).  Additionally, Officer Taylor testified he searched the vehicle and discovered the black utility knife in the back pocket on the rear passenger side of the car, directly in front of where Montez was sitting.  (*Id.*, pgs. 150, 153).  Officer Taylor additionally found a tan South Pole tee shirt in the backseat, driver's-side floorboard.  (*Id.*, pg. 151).

### c.  The Merits of These Claims

In these subpoints, petitioner fails to specifically allege a constitutional violation.  The Court liberally construes these arguments to allege that the evidence was factually and legally insufficient to support the conviction.  In Texas, factual sufficiency of the evidence is only reviewable on direct appeal.  *Coleman v. Quarterman*, 456 F.3d 537, 546 (5th Cir. 2006), *cert. denied*, 549 U.S. 1343, 127 S.Ct. 2030, 167 L.Ed.2d (2007).  Such claims are not cognizable in state habeas proceedings and are therefore procedurally barred from consideration on federal habeas corpus review.  *Id.*

For purposes of federal habeas corpus review, a state conviction need only satisfy the legal sufficiency standard set out in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).  To determine the legal sufficiency of the evidence, a federal court must consider whether, viewing all the evidence "in the light most favorable to the prosecution, any rational trier of fact could have found the existence of facts necessary to establish the essential elements of the offense beyond a reasonable doubt."  *Id.* at 318-19, 99 S.Ct. at 2789.

In making this determination, the reviewing court must resolve all credibility choices and conflicting inferences in favor of the fact finder.  *United States v. Cyprian*, 197 F.3d 736, 740 (5th Cir. 1999), *cert. denied*, 531 U.S. 822, 121 S.Ct. 65, 148 L.Ed.2d 31 (2000).  It is the fact-finder's

responsibility alone "to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. The reviewing court must determine if the evidence is constitutionally sufficient to support the conviction, i.e., whether the evidence satisfied the "substantive elements of the criminal offense as defined by state law." *Brown v. Collins*, 937 F.2d 175, 181 (5th Cir. 1991).

The issue of whether the evidence in this case was factually sufficient is procedurally barred. *See Coleman*, 456 F.3d at 546. Regarding legal sufficiency, petitioner correctly points out there were some contradictions in the testimony about the described race of the robber. (*See* RR, vol. 3, pgs. 34, 115, 139, 149). The jury, however, heard Stubblefield's in-court identification of Montez as the robber. (*Id.*, pg. 36). Stubblefield testified he described the robber to the police as Hispanic. (*Id.*, pg. 58). The jury was presented with three police officers: one testified the robber was described as white or Hispanic, one testified the robber was described as white, and another did not remember if the robber's race was ever described at all. (*Id.*, pgs. 115, 139, 149). To the extent this conflict in the testimony was relevant in light of Stubblefield's in-court identification, it was resolved by the jury against Montez. This Court is not permitted to question that credibility determination. *See Cyprian*, 197 F.3d at 740. The jury also had before it evidence that both the box cutter and South Pole tee shirt were in a small, enclosed area with petitioner immediately before the stop. From this evidence, the jury could have easily concluded the items were in Montez's possession immediately before the arrest. This Court will not question that conclusion. *See Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789.

In sum, the jury heard evidence Montez unlawfully appropriated property from J.C. Penney's, thereby committing theft. *See* Tex. Pen. Code Ann. § 31.03(a) (Vernon 2011); (RR, vol.

3, pg. 36 (Stubblefield identified Montez as the man who stole the clothing)).  It additionally heard evidence showing Montez threatened or placed Stubblefield in fear of imminent bodily injury or death, thereby elevating the theft to robbery.  *See* Tex. Pen. Code Ann. § 29.02(a); (RR, vol. 3, pg. 31 (Stubblefield testified he felt his life was in danger and was concerned Montez would use the box cutter to harm him if he continued the pursuit)).  The evidence was legally sufficient to support a conviction for robbery.  *See Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789.  To the extent these subpoints of error are not procedurally barred, they are without merit.

### 3.  *Identification Procedures*

In his fourth subpoint of error, petitioner contends the identification procedure employed by Officer Sanders was impermissibly suggestive.  Determining whether an identification violates due process involves answering two questions: (1) was the identification procedure impermissibly suggestive and, (2) if so, did the procedure pose a "very substantial likelihood of irreparable misidentification." *Perry v. New Hampshire*, ___ S. Ct. ___, 2012 WL 75048, at *3 (2011); *United States v. Rogers*, 126 F.3d 655, 658 (5th Cir. 1997).  If the answer to both questions is yes, both the pre-trial and in-court identifications are inadmissible.  *Rogers*, 126 F.3d at 658.

The Fifth Circuit has not held the use of "show-up" identifications is per se suggestive, but such identifications are usually considered unduly suggestive.  *See United States v. Shaw*, 894 F.2d 689, 692 (5th Cir. 1990) (holding a show-up identification was impermissibly suggestive when the defendant was taken out of a police vehicle, presented to the witnesses in handcuffs, and was the only person presented to the witnesses).  The Supreme Court has noted, however, "the practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned." *Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d

1199 (1967), *overruled on other grounds*, *Griffith v. Kentucky*, 479 U.S. 314, 326, 107 S.Ct. 708, 715, 93 L.Ed.2d 649 (1987). Show-up identifications do not violate a defendant's due process rights when they are performed out of necessity or urgency. *See id.*, 87 S.Ct. at 1972 (holding a show-up identification did not violate the defendant's due process rights when the only witness who could identify or exonerate him was in the hospital near death); *Livingston v. Johnson*, 107 F.3d 297, 309 (5th Cir. 1997) (holding a show-up identification did not violate a defendant's due process rights when "the exigency of the circumstances" made the procedure necessary).

If the identification procedure was impermissibly suggestive, the reviewing court must take its analysis a step further and determine whether the result of the identification procedure was unreliable. *Perry*, 2012 WL 75048, at *3. The five factors considered in determining the likelihood of misidentification are: (1) the opportunity of the witness to observe the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description; (4) the witness's level of certainty; and (5) the time between the crime and the identification. *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977). "[R]eliability is the linchpin in determining the admissibility of identification testimony." *Id.*, 97 S.Ct. at 2253.

In this case, Stubblefield testified "I got a phone call from Amarillo Police Department and they told me to come downstairs and when I did, the gentleman that committed the shoplifting was in the back seat of one of the vehicles." (RR, vol. 3, pg. 40). Officer Sanders, who was the officer conducting the show-up identification, testified that he pulled into the J.C. Penney's parking lot with Montez in the back of his police car. (*Id.*, pg. 99). He was not in Stubblefield's sight. (*Id.*). At that point, he "made contact with" Stubblefield and had Stubblefield give a description of the robber, box cutter, and stolen property so as to ensure Stubblefield could give a clear description "without

him actually seeing who I had detained." (*Id.*).  Stubblefield's description matched Montez, the box

cutter, and the shirt discovered in the car.  (*Id.*, pgs. 99-100).  At that point, Officer Sanders

> walked [Montez] over and showed [Stubblefield] who I had detained and the
> property and [Stubblefield] verified that Mr. Montez was the suspect who had
> committed the robbery and the weapon that we found was the weapon that was used
> and the shirt that we had recovered was the shirt that was stolen from Penney's.

(*Id.*, pg. 100).[2]

The show-up identification method employed by Officer Sanders, while possibly

problematic, was not unconstitutional.  *See Shaw*, 894 F.2d at 692.  Despite Officer Sanders's

testimony that he took Montez out of the police car, Stubblefield testified he viewed Montez while

Montez was detained in the back seat of the police car.  (RR, vol. 3, pg. 40).  There is no testimony

about whether Montez was presented to Stubblefield in handcuffs, but he was clearly the only

person presented to Stubblefield as the suspected robber.  Aggravating the identification procedure

is the fact that there was no need to employ it, i.e., there were no extenuating circumstances

necessitating a show-up identification.  *See Stovall*, 388 U.S. at 302, 87 S.Ct. at 1967.

Assuming the identification procedure was impermissibly suggestive, the identification did

not create a very substantial likelihood of irreparable misidentification.  *See Brathwaite*, 432 U.S.

at 114, 97 S.Ct. at 2243; *Rogers*, 126 F.3d at 658.  First, Stubblefield testified he initially observed

the robber from twenty feet away.  (RR, vol. 3, pg. 28).  He followed as the robber left the store.

(*Id.*, pg. 29).  At the time the robber turned, Stubblefield observed him, directly in the face, from

ten feet away, during the daytime.  (*Id.*, pgs. 23, 63).  Thus, Stubblefield had ample opportunity to

clearly and closely view the robber at the time the crime occurred.  *See Brathwaite*, 432 U.S. at 114,

---

[2]  Montez claims Officer Sanders called Stubblefield and gave Stubblefield a description of Montez, the tee
shirt discovered in the floorboard next to Montez, and the utility knife discovered in the seat pocket in front of
Montez.  The record does not support this conclusory and unsupported allegation.  *See Ross*, 964 F.2d at 1011.

97 S.Ct. at 2253.  Second, Stubblefield testified that he had a clear, unobstructed view of the robber the entire time and that he never took his eyes off of the robber.  (RR, vol. 3, pg. 56); *see Brathwaite*, 432 U.S. at 114, 97 S.Ct. at 2253.

Third, Stubblefield's description of the robber was very specific *before* the police presented Montez at the show-up identification.  Stubblefield testified he described the robber to the police as a Hispanic male wearing a grey tee shirt, blue cargo denim shorts, and a ball cap.  (RR, vol. 3, pgs. 34, 54, 58).  He was 5'6" to 5'7" and 140 to 150 pounds and had significant tattoos on both calves.  (*Id.*).  Officer Taylor's trial testimony confirmed this was to be Stubblefield's pre-arrest description of the robber.  (*Id.*, pg. 149).  Additionally, Officer Sanders testified Montez matched the description Stubblefield gave him of the robber when he called Stubblefield prior to the identification.  (*Id.*, pg. 99).  Evidence at trial confirmed Montez matched almost all of the descriptors Stubblefield gave prior to being presented with Montez for identification.[3]  Because Montez very closely matched Stubblefield's description of the robber, Stubblefield's prior description appears to be very accurate.  *See Brathwaite*, 432 U.S. at 114, 97 S.Ct. at 2253.

Fourth, Stubblefield never wavered on his identification of Montez as the robber.  He was always very certain Montez was the robber and never wavered in that certainty.  *See id.*, 97 S.Ct. at 2253.  Fifth, only two hours elapsed between the time the robber left the store parking lot and the time Montez was presented to Stubblefield for identification.  (RR, vol. 3, pg. 41); *see Brathwaite* 432 U.S. at 114, 97 S.Ct. at 2253; *McGee v. Estelle*, 632 F.2d 476, 478 (5th Cir. 1980) (holding a

---

[3]  As discussed above, there was some disagreement among the police officers about whether Stubblefield described the robber as white or Hispanic (or whether he described the robber's race at all), but no discrepancy in any of Stubblefield's actual descriptions.  Only one person ever testified the robber was described as white, and that officer did not have direct contact with Stubblefield until after Montez's arrest. (RR, vol. 3, pg. 115).  Stubblefield testified he told police the robber appeared to be Hispanic.  (*Id.*, pg. 58).  Officer Taylor, who was the only one to speak with Stubblefield before the arrest, testified Stubblefield described the robber as white or Hispanic.  (*Id.*, pg. 149).

lineup that took place within two to three hours after a robbery satisfied the fifth *Brathwaite* factor).

Taking all of these factors into consideration, there was little likelihood the show-up identification

cased damage to Stubblefield's ability to correctly recognize the robber. *See Brathwaite*, 432 U.S.

at 114, 97 S.Ct. at 2253. The identification itself was reliable. *See id.* Because Stubblefield's

identification of Montez was not irreparably corrupted by any error in the identification procedure,

this subpoint of error must fail. *See id.*

### 4. Police Investigation

In his fifth, sixth, and seventh subpoints, petitioner contends the police failed to conduct an

adequate investigation, which he contends should have included review of the footage of J.C.

Penney's sixteen security video cameras, questioning store employees, and questioning mall

security personnel. Due process requires the state preserve evidence meeting the standard of

"constitutional materiality," or evidence possessing both "an exculpatory value that was apparent

before the evidence was destroyed, and be of such a nature that the defendant would be unable to

obtain comparable evidence by other reasonably available means." *California v. Trombetta*, 467

U.S. 479, 489, 104 S.Ct. 2528, 2543, 81 L.Ed.2d 412 (1984). Unless a criminal defendant can show

bad faith on the part of the police, failure of the police to preserve potentially useful evidence does

not constitute a denial of due process. *Arizona v. Youngblood*, 488 U.S. 51, 57-58, 109 S.Ct. 333,

337, 102 L.Ed.2d 281 (1988). A defendant need not show bad faith if he can establish the evidence

was material and exculpatory. *Illinois v. Fisher*, 540 U.S. 544, 547, 124 S.Ct. 1200, 1202, 157

L.Ed.2d 1060 (2004); *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215

(1963).

During the trial of this case, Stubblefield testified there were sixteen video cameras in the

store on the day of the robbery.  (RR, vol. 3, pg. 43).  There were no cameras monitoring the parking lot.  (*Id.*, pg. 42).  Stubblefield, who was the head of the security department for J.C. Penney's, testified he physically had to change the cameras' locations by going up into the ceiling and repositioning them.  (*Id.*, pgs. 43, 76).  Each camera was fixed on one place.  (*Id.*).  Stubblefield placed the cameras so as to record the store employees, as opposed to the shoppers, because the store had greater internal theft than external theft.  (*Id.*, pg. 44).  On the day of the robbery, there was not a security camera focused on the South Pole clothing area.  (*Id.*).  The closest security camera was fixed on the cash register fifteen feet away from that particular clothing area.  (*Id.*, pg. 45).  Stubblefield testified he did not preserve the security camera footage from the day of the robbery because none of the cameras recorded anything relevant to the robbery.  (*Id.*).  Stubblefield also stated he was the only one who observed the shoplifting.  (*Id.*, pg. 81).  Officer Taylor testified he did not check to see whether there was security camera footage of the store itself or of the store parking lot.  (*Id.*, pg. 165).  No testimony was elicited regarding whether the police spoke with mall security or J.C. Penney's employees (other than Stubblefield).

While petitioner, by his allegation, assumes police never spoke with mall security or J.C. Penney's employees, there is no testimony on the record supporting that assumption.  Even if the police officers had testified that they had not spoken with anyone other than Stubblefield, these grounds of error would not entitle petitioner to relief.

The fatal flaw in these grounds is that Montez cannot demonstrate the video recordings and/or interviews of other people would have been material and exculpatory.  *See Trombetta*, 467 U.S. at 489, 104 S.Ct. at 2543; *Brady*, 373 U.S. at 87, 83 S.Ct. at 1196-97.  Montez, who has not seen any video footage, merely assumes such footage would have proven he did not enter the store

on the day of the robbery. Without having viewed the videos, however, such an assumption is baseless, especially in light of Stubblefield's testimony that only the cash registers (and not the doors or South Pole clothing area) were subject to recording on the day of the robbery. (*See* RR, vol. 3, pgs. 44-45). Relying solely upon the unsubstantiated assumption that the recordings would have been mitigating, Montez has failed to demonstrate any bad faith on the part of the police for failing to preserve the recordings. *See Youngblood*, 488 U.S. at 57-58, 109 S.Ct. at 337. Petitioner has failed to establish any due process violation, and his fifth, sixth, and seventh subpoints of error must fail.

### 5. Clothes Worn at Time of Arrest

In his eighth subpoint of error, petitioner contends the police erred by failing to book into evidence the clothes he was wearing at the time of his arrest but then using those clothes as evidence against him during the trial. Montez contends admission of the clothes at trial was improper because the State failed to establish a chain of custody. (*Memo*, pg. 7).

This Court construes Montez's argument as one that the clothes were not properly authenticated. Under Texas law, authentication of physical evidence requires identification by "evidence sufficient to support a finding that the matter in question is what its proponent claims." Tex. R. Evid. 901(a). Testimony by a witness that the matter is what it is claimed to be is sufficient to meet the Rule 901(a) standard. *Id.*, 901(b)(1). Proof of the beginning and end of the chain of custody will support admission of an object barring any evidence of tampering or alteration. *Stoker v. State*, 788 S.W.2d 1, 10 (Tex. Crim. App. 1989), *cert. denied*, 498 U.S. 951, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990). A break in the chain of custody does not impact whether the evidence is admissible, it only impacts the weight the jury gives to the evidence. *Davis v. State*, 313 S.W.3d

317, 348 (Tex. Crim. App. 2010).

In this case, the State called Frank Lockwood, a deputy jailer, to testify. Lockwood brought with him property bags containing the clothing and personal effects of Montez at the time he was booked into jail on the day of his arrest. (RR, vol. 3, pg. 17). The bags contained a plain grey tee shirt, denim cargo jean shorts, and a navy and white Adidas hat. (*Id.*, pg. 18). Officer Sanders testified the clothes from the bags were the same clothes Montez was wearing when he arrested Montez. (*Id.*, pg. 94).

Contrary to Montez's contention, the State did establish a chain of custody. Specifically, through the testimony of Sanders and Lockwood, the State established the beginning and end of the chain of custody of the clothes. *See Stoker*, 788 S.W.2d at 10. There was never an allegation the clothes admitted into evidence were tampered with, and there was no evidence of any break in the chain of custody. *See id.* Even if there was an issue with the chain of custody, it would affect the weight, not the admissibility, of the evidence—the clothes were still admissible. *See Davis*, 313 S.W.3d at 348. This subpoint of error is meritless.

## B.  TRIAL COURT MISCONDUCT

In his second and sixth points of error, petitioner Montez complains of actions taken by the trial court. In his second point of error, Montez contends the trial court did not properly resolve pre-trial matters. Specifically,

1.    The trial court failed to rule on Montez's pre-trial motions.

2.    Montez had no opportunity to conduct discovery.

3.    Montez's clothes were not tendered or marked as exhibits at the pre-trial hearing.

4.    Montez's clothes were used at trial despite the fact he did not stipulate to their admission.

5.      The State failed to notify Montez of its intention to introduce the clothes at trial.

6.      The State failed to turn over exculpatory evidence.

In his sixth point of error, petitioner contends the trial court's bias violated his constitutional rights.

Specifically, Montez contends the trial court erred by,

1.      Failing to act on pre-trial motions.

2.      Failing to act on Montez's discovery motions.

3.      Overruling Montez's objections and a motion for mistrial regarding the introduction of the clothes Montez was wearing at the time of arrest.

4.      Overruling Montez's objection and motion for mistrial "[w]here the trial court arbitrarily allowed State [sic] to present a false picture and fabricate the facts." (*Memo*, pg. 28).

5.      Allowing the State to exhibit Montez's clothing in a jail property bag.

6.      Denying Montez his presumption of innocence and his right to a fair trial.

7.      Admitting Montez's clothing into evidence.

8.      Playing prosecutor and taking a personal interest in denying Montez a fair trial.

9.      Favoring the State when Montez objected, at a particular point during the trial, to "facts not in evidence."

10.     Failing to rule on one of Montez's objections.

11.     Making Montez display the tattoos on his legs to the jury.

l2.     Overruling Montez's objection to the jury charge at the guilt/innocence stage.

Several of these subpoints of error in the second and sixth points of error are related, if not repetitive. The Court will conjunctively address related subpoints.

## 1. Standard of Review

Generally, errors of state law, including evidentiary errors, are not cognizable on habeas

corpus review.   *Derden v. McNeel*, 978 F.2d 1453, 1458 (5th Cir. 1992).   "A state court's evidentiary rulings present cognizable habeas claims only if they run afoul of a specific constitutional right or render the petitioner's trial fundamentally unfair." *Cupit v. Whitley*, 28 F.3d 532, 536 (5th Cir. 1994).   If the state trial court's rulings do implicate a constitutional right, habeas corpus relief is granted only where the error has a "substantial and injurious effect or influence in determining the jury's verdict." *ShisInday v. Quarterman*, 511 F.3d 514, 524 (5th Cir. 2007) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 1722, 123 L.Ed.2d 353 (1993)).

### 2.  Discovery

In his first and second subpoints of the second point of error and his first and second subpoints of the sixth point of error, Montez complains the trial court failed to rule on pretrial discovery motions and that, as a result, he was unable to engage in discovery of relevant evidence prior to trial.[4]   In the sixth subpoint of the second point of error, petitioner again complains of his inability to review certain items of evidence.

Under Texas law, a defendant is entitled to discovery of evidence "material to any matter involved in the action and . . . in the possession, custody or control of the State or any of its agencies." Tex. Code Crim. Proc. Ann. art. 39.14(a) (Vernon 2005).   Inasmuch as federal habeas corpus law is concerned, however, "[t]here is no general constitutional right to discovery in a criminal case, and *Brady* did not create one." *Pennsylvania v. Ritchie*, 480 U.S. 39, 59-60, 107 S.Ct. 989, 1002, 94 L.Ed.2d 40 (1987).   Thus, a defendant may request disclosure of exculpatory material, but "it is the State that decides which information must be disclosed.   Unless defense counsel

---

[4]   While petitioner references, in his supporting memorandum, a portion of the Reporter's Record dealing with fingerprinting Montez at trial, petitioner clarifies in his response to respondent's answer that he complains of the trial court's failure to rule on a discovery motion filed by his attorney.

becomes aware that other exculpatory evidence was withheld and brings it to the court's attention, the prosecutor's decision on disclosure is final." *Id.* at 59, 107 S.Ct. at 1002.

In this case, Montez filed three motions relating to discovery.  (Clerk's Record [hereinafter CR], vol. 1, pgs. 4, 7, 11).  The trial court, however, did not enter an order on any of these motions. At the pre-trial hearing, after briefly discussing whether Montez would submit to fingerprinting, the trial court asked the defense if there were any other issues for the court to address (RR, vol. 2, pg. 3).  Montez's attorney indicated there were no remaining issues.  (*Id.*).

Montez contends he should have been allowed to review (1) a copy of the document with his signature confirming he received a *Miranda* warning, (2) the video and audio recording of Officer Sanders's in-car camera system, which could have confirmed that he did not receive a *Miranda* warning and that Officer Sanders improperly communicated with Stubblefield, and (3) the box cutter so as to inspect and fingerprint it.  (*Memo*, pgs. 10, 27).   Regarding (1) and (2), Montez assumes such evidence exists, but there is nothing in the record or Montez's pleadings supporting such an assumption.  There is, therefore, no basis for a determination any such evidence was ever in the State's possession.  Regarding (1), (2), and (3), even if the evidence did exist, there is no basis for the conclusion such evidence was exculpatory.

More importantly, any error by the trial court in not ruling on the motions is an error of state law, which is not cognizable on federal habeas corpus review.  *See Derden*, 978 F.2d at 1458. Montez has not pinpointed any specific federal constitutional right that was implicated by the trial court's failure to rule on the motions and his inability to review the evidence.  Indeed, contrary to the argument in his pleadings, Montez had no constitutional right to discovery.  *See Ritchie*, 480 U.S. at 59-60, 107 S.Ct. at 1002.  Further, even if he did have a constitutional right to the materials

he lists, Montez has failed to demonstrate his inability to review such evidence had a substantial and injurious effect on the jury's verdict. *See ShisInday*, 511 F.3d at 524. All of this, of course, assumes the evidence Montez argues the State should have turned over actually existed, and such an assumption is unsupported in the record. *See Ross*, 694 F.2d at 1011 (holding "[a]bsent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value."). These subpoints of error are without merit.

### 3. Clothes Worn at Time of Arrest

In the third, fourth, and fifth subpoints of the second point of error and the third, fifth, sixth, seventh, and eighth subpoints of the sixth point of error, Montez complains about the admission into evidence of the clothes he was wearing at the time of his arrest. Montez complains the trial court erred when it admitted these clothes into evidence. To the extent Montez complains of the State's failure to notify him of its intention to use the clothes at trial, such error is unrelated to the trial court's actions. Arguments regarding the State's actions are addressed in section IV.F, *infra*. To the extent Montez complains there was no chain of custody for the clothes, such arguments have already been addressed and found meritless in section IV.A.5.

As summarized above, at trial, the State presented a jailer who brought with him the clothes Montez was wearing at the time of his arrest. (RR, vol. 3, pg. 17). The clothes Montez was wearing (and which were introduced into evidence at trial) matched Stubblefield's description of the clothes worn by the robber. (*Id.*, pgs. 17, 35-37). Before the jailer revealed whether Montez was incarcerated at the time of trial, Montez's attorney asked to approach the bench. (*Id.*, pg. 12). After an off-the-record bench conference, the judge excused the jury and conducted a hearing on the

admissibility of the clothes and on the jailer's testimony.  (*Id.*, pgs. 12-17).  Montez's attorney argued the testimony that a jailer had possession of Montez's clothes was akin to trying Montez in prison garb because it indicated Montez was incarcerated at the time of trial.  (*Id.*, pg. 12).  Defense counsel moved for a mistrial.  (*Id.*, pg.13).  The prosecution urged the evidence was proper because the clothes matched the description of the clothes worn by the robber; the jailer would only testify about what Montez was wearing on the day of the arrest; and any testimony about what Montez was wearing at the time of arrest was not prejudicial because the police clearly had arrested Montez for the offense.  (*Id.*).

The Court overruled the objection and denied the motion for mistrial, but sharply limited the subject area on which the jailer could testify.  (*Id.*, pgs. 15-16).  In compliance with the court's order, the prosecution asked the jailer, "And these were the clothes that were taken off of Derek Wayne Montez on June 11th of 2006; is that correct?" (*Id.*, pg. 18).  The jailer answered, "Yes, sir." (*Id.*).

### a.  Objection to Admissibility

Petitioner contends the trial court erred by overruling his objection to the admission of the clothes he was wearing at the time of arrest.  He contends their admission, especially via a jailer, was highly prejudicial and in violation of his presumption of innocence.  (*Memo*, pg. 28).  As discussed above, any error relating to the admission of evidence is generally not cognizable on federal habeas corpus review.  *Derden*, 978 F.2d at 1458.  On the other hand, it is well-established that it is not proper for the jury to know a defendant is in custody at the time of trial.  *United States v. Pryor*, 483 F.3d 309, 311 (5th Cir. 2007).  A defendant's status as a prisoner infers he is a criminal, which may undermine the fairness of his trial and his presumption of innocence.  *Id.*

In this case, however, the jailer only testified about what Montez was wearing on the day

of his arrest.  (RR, vol. 3, pg. 17).  The clothes were used by the prosecution throughout the trial

only to establish the clothes Montez was wearing at the time of his arrest matched the description

of the clothes worn by the robber.  (*Id.*, pgs. 35-36, 94).  None of the jailer's testimony indicated

Montez remained in custody at the time of trial.  Rather, such testimony only indicated Montez was

arrested on June 11, 2006, a fact which the jury knew from the testimony of several police officers.

Because the jailer only testified about what Montez was wearing on the day of arrest, there was no

reason for the jury to question whether Montez was still in custody at the time of the trial.  *See*

*Dawson*, 563 F.2d 149, 151 (5th Cir. 1977).  Assuming the trial court's evidentiary ruling is subject

to review on habeas corpus, the decision to overrule Montez's objection to the admission of the

clothes into evidence did not violate any specific constitutional right or render Montez's trial

fundamentally unfair.  *Cupit*, 28 F.3d at 536.  These subpoints are without merit.

b.  Possession of Clothing

Petitioner contends there was no legal authorization for the State to seize his clothing and

use it as evidence at trial.  The Supreme Court long ago established, "clothing or other belongings

may be seized upon arrival of the accused at the place of detention and later subjected to laboratory

analysis . . . [and] the test results are admissible at trial."  *United States v. Edwards*, 415 U.S. 800,

803-04, 94 S.Ct. 1234, 1237, 39 L.Ed.2d 771 (1974).  The Court held that police are entitled to take

a defendant's clothing, keep it in official custody, and use it against him at trial.  *Id.*, 94 S.Ct. at

1237-38.  As long as the police have lawful custody of the defendant, they have lawful custody over

the clothing he was wearing when arrested.  *Id.*, 94 S.Ct. at 1237-38.  In such a situation, no warrant

is necessary for the police to seize the clothing.  *Id.* at 808-09, 94 S.Ct. at 1239-40.

The police took Montez's clothes when he was booked into detention and issued him a jail uniform, in accordance with normal police procedure. (RR, vol. 3, pgs. 19-20, 21, 96). These same clothes, taken off of Montez and kept in police custody, were later admitted at trial. (*Id.*, pg. 96). Montez has never established that he was not properly in police custody. As a properly arrested robbery suspect, the police were entitled to take Montez's clothing, keep it in official custody, and use it later at trial. *Edwards*, 415 U.S. at 804, 94 S.Ct. at 1237-38. The trial court's decision to allow the clothing into evidence did not violate any of Montez's constitutional rights. *See Cupit*, 28 F.3d at 536. Habeas corpus relief is not warranted because these subpoints of error do not present cognizable habeas corpus claims.

### 4. Rulings on Objections

In the fourth, ninth, tenth, and twelfth subpoints of his sixth point of error, Montez complains of rulings by the trial court on various objections lodged by his attorney. In order to justify a writ of habeas corpus, a petitioner complaining of rulings by the trial court on objections must demonstrate that the court's rulings violated a specific constitutional right. *See Cupit*, 28 F.3d at 536.

#### a. Motion for Mistrial and Objection to "Facts Not in Evidence"

Montez complains (in his fourth subpoint) the trial court "erred by overruling Applicant's objection and motion for mistrial. Where [sic] trial court arbitrarily allowed state to present a false picture and fabricate the facts." (*Memo*, pg. 28). The pages of the Reporter's Record referenced by petitioner included the testimony of one of the police officers. Officer Sanders testified about how the box cutter or utility knife wielded by the robber in the store parking lot could be a deadly weapon. (RR, vol. 3, pgs. 107-114). Montez's attorney objected at various points throughout the

officer's testimony regarding the box cutter.  At one point, the attorney moved for a mistrial after the officer slipped into a narrative form of testimony regarding how quickly it would take a person with a box cutter to inflict serious bodily harm.  (*Id.*, pg. 114).

Montez next complains (in his ninth subpoint) the trial court erred when it overruled another objection.  The prosecutor asked Stubblefield, the loss-prevention officer, "Do you see the person who threatened you with the box cutter in the courtroom here today?"  (RR, vol. 3, pg. 36).  Stubblefield replied, "I do, yes, sir."  (*Id.*).  At that point, Montez's attorney objected "to the way that question is phrased.  It assumes facts not in evidence."  (*Id.*).  The trial court overruled the objection, and Stubblefield proceeded to identify Montez as the robber.  (*Id.*).

First, Montez has failed to demonstrate how these two evidentiary rulings were incorrect.  Assuming they were incorrect, Montez has not shown how they impacted any of his constitutional rights; he has failed to present a cognizable habeas corpus claim.  *See Cupit*, 28 F.3d at 536.  Assuming some constitutional right was implicated by either of the objections, Montez has disregarded his burden of establishing the rulings ultimately had any impact on the jury's verdict.  *See ShisInday*, 511 F.3d at 524.  Quite to the contrary, Montez repeatedly points out that the jury did not convict him of using a deadly weapon, so logic would dictate the jury must not have been impacted by Officer Sanders's testimony that the box cutter was a deadly weapon.  (*Memo*, pgs. 20-23).  These subpoints are not cognizable on habeas corpus.  *See Derden*, 978 F.2d at 1458.  Even if they were, they are meritless.

### b.  Objection Not Ruled On by Trial Court

In his tenth subpoint of error, Montez complains about an occasion on which the trial court failed to rule on an objection.  During Stubblefield's testimony, the prosecutor asked "Now, before

you observed this person reach into his pocket, had that person indicated to you -- well, in what way, if any, had this person indicated to you that he realized he was being followed?" (RR, vol. 3, pgs. 29-30). Montez's attorney objected that the question was leading. (*Id.*, pg. 30). The prosecution responded the question was not leading, and Stubblefield answered the question. (*Id.*). The trial court did not rule on the objection. (*See id.*).

First, Montez has not argued how this failure to rule implicated any of his constitutional rights. The issue is therefore not cognizable on habeas corpus review. *See Cupit*, 25 F.3d at 536. Were the issue cognizable, the subpoint is without merit because Montez has not shown error. Under Texas law, a trial court need not expressly rule on an objection. *Montanez v. State*, 195 S.W.3d 101, 104 (Tex. Crim. App. 2006). "A trial court's ruling on a matter need not be expressly stated if its actions or other statements otherwise unquestionably indicate a ruling." *Id.* (quoting *Rey v. State*, 897 S.W.2d 333, 336 (Tex. Crim. App. 1995)). Petitioner's contention the trial court erred by failing to act upon one of his objections is defeated by the state law that a trial court's failure to expressly rule on an objection implicitly overrules the objection. *See id.* Even though it was not explicit, the trial court's silence and allowance of Stubblefield to answer the question implicitly overruled the objection. *See id.* Were it cognizable on habeas corpus review, this ground of error is without merit.

### c. Objection to Jury Charge

In his twelfth subpoint of error, Montez complains a lesser included offense instruction his attorney objected to "lessen[ed] the burden of proof for the state, because the box cutter 'put into evidence' never was a deadly weapon per se." (*Memo*, pg. 30). At the conclusion of the guilt/innocence portion of the trial, the jury was instructed on the elements of aggravated robbery,

robbery, and theft.  (CR, vol. 1, pg. 32).  Montez's attorney objected to the inclusion of an instruction on robbery. (RR, vol. 3, pg. 187).  His objection was overruled.  (*Id.*, pg. 188).  The jury ultimately found Montez guilty of robbery.

Due process rights can be implicated by the instructions given to a jury.  "[D]ue process requires a lesser included offense instruction be given when the evidence warrants such an instruction."  *Hopper v. Evans*, 456 U.S. 605, 611, 102 S.Ct. 2049, 2053, 72 L.Ed.2d 367 (1982).  Thus, a lesser included offense instruction is merited only when "the evidence would permit a jury rationally to find [the defendant] guilty of the lesser offense and acquit him of the greater."  *Jones v. Johnson*, 171 F.3d 270, 274 (5th Cir.), *cert. denied*, 527 U.S. 1059, 120 S.Ct. 29, 144 L.Ed.2d 832 (1999).  Under Texas law, there is a two-step test to determine whether a lesser included offense instruction is warranted: "first, the lesser included offense must be within the proof necessary to establish the offense charged; second, there must be some evidence in the record that if the defendant is guilty, he is guilty only of the lesser offense."  *Richards v. Quarterman*, 566 F.3d 553, 568 (5th Cir. 2009).

In this case, it was in dispute whether the box cutter could be considered a deadly weapon. The prosecution believed the box cutter was a deadly weapon.  It also believed, however, the jury could conclude the box cutter was not a deadly weapon, and thus find Montez not guilty of aggravated robbery.  Even if the jury found Montez not guilty of aggravated robbery, the prosecution believed, it could nonetheless find he had threatened Stubblefield, and therefore find Montez guilty of robbery. (RR, vol. 3, pgs. 188-89).  The trial court, at the State's request, included instructions on robbery in the jury charge.  Also in the jury charge, the trial court gave adequate instructions on how the burden of proof was only on the State and never shifted to the defendant.

(CR, vol. 1, pg. 38).

Given the record, petitioner has failed to establish how the jury instruction on the lesser included offense of robbery decreased the State's burden of proof. Montez appears to argue that because robbery allowed the jury to find the box cutter was not a deadly weapon, somehow the State's ultimate burden of proof was lessened. Montez confuses a reduction in the number of elements required to prove the commission of a less-severe crime with lowering the State's overall burden of proof. Montez's due process rights were not violated because the evidence warranted the robbery instruction and allowed the jury to convict him on a crime without finding that he used a deadly weapon. *See Richards*, 566 F.3d at 568. Montez has not demonstrated the trial court erred by instructing the jury on the lesser included offense of robbery. This ground of error is without merit.

### 5.  Display of Tattoos

In the eleventh subpoint of the sixth point of error, Montez avers his Fifth Amendment right against self-incrimination was violated when the trial court made him show the jury the tattoos on his legs. After several witnesses had testified Stubblefield described the robber as having "sock" tattoos going up either side of his calves, the prosecution sought to compel Montez to show his tattoos to the jury. After a conference outside the jury's presence, and over defense's objection, the trial court determined the jury should see the tattoos. (RR, vol. 3, pgs. 170-74). The jury was called back in and, through the testimony of one of the police officers, Montez stood before the jury and pulled his pant legs up and his socks down, displaying tattoos apparently covering his calves. (*Id.*, pg. 176).

The Fifth Amendment protects a criminal defendant from testifying against himself. The

question involved in mere displays of the defendant to the jury is whether a display is "testimonial" in nature, in violation of the Fifth Amendment's protections. The Supreme Court long ago answered that question when it held,

> [T]he distinction to be drawn under the Fifth Amendment privilege against self-incrimination is one between an accused's "communications" in whatever form, vocal or physical, and "compulsion which makes a suspect or accused the source of 'real or physical evidence.'" We recognized that "both federal and state courts have usually held that . . . [the privilege] offers no protection against compulsion to submit to fingerprinting, photography, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture.

*United States v. Wade*, 388 U.S. 218, 223, 87 S.Ct. 1926, 1930, 18 L.Ed.2d 1149 (1967) (internal citations omitted). The Fifth Circuit, relying upon *Wade*, later held a defendant's Fifth Amendment rights were not violated when, during a bench trial, the court took judicial notice of the defendant's identifying tattoos. *Tasco v. Butler*, 835 F.2d 1120, 1124 (5th Cir. 1988). Given this well-established and binding caselaw, Montez's Fifth Amendment rights were not violated when he was forced to display his tattoos to the jury. *See id.*; *Wade*, 388 U.S. at 223, 87 S.Ct. at 1930. This ground of error is without merit.

## C. JURY

In his third point of error, petitioner contends his constitutional rights were violated because he did not have a fair and impartial jury. Specifically, Montez avers,

1.  One of the jurors worked with the three police officers who testified against Montez.

2.  Another one of the jurors had a nephew who was a police officer.

3.  There were no black venirepersons.

4.  When responding to the state habeas corpus application, the State failed to address the issue that there were no black venirepersons.

### 1.  Juror Bias

In his first and second subpoints, Montez complains two of the jurors were biased.  Juror Dahl stated in voir dire that she worked at the city jail.  (RR, vol. 2, pg. 47).  She never testified as to her relationship with or knowledge of the three police officers, or anyone else, who testified at trial.  She did, however, testify her job at the jail would not " cause [her] any problems" with being a juror.  (*Id.*, pgs. 47-48).  Juror Campbell stated during voir dire she had a nephew who was a police officer in a neighboring town.  (*Id.*, pg. 62).  She testified her relationship with a police officer "wouldn't cause [her] any difficulty" in sitting on the jury.  (*Id.*).  At trial, Montez's attorney did not issue a challenge for cause or exercise his peremptory strikes against either juror, and both Dahl and Campbell were impaneled on the jury.  (*See id.*, pg. 98).

Under Texas law, if an error occurs at trial, counsel must object to that error at the time it occurs in order to preserve the error for later court review.  Tex. R. App. P. 33.1(a)(1).  This includes errors that occur during voir dire.  *Hyundai Motor Co. v. Vasquez*, 189 S.W.3d 743, 759 (Tex. 2006) (holding "voir dire objections must be timely and plainly presented" for later courts to review any potential error occurring during voir dire).  The general rule that counsel must object to the error to preserve it for later review is called the "Texas contemporaneous objection rule."

"The 'Texas contemporaneous objection rule constitutes an adequate and independent state ground that procedurally bars federal habeas review of a petitioner's claims.'" *Styron*, 262 F.3d 438, 453 (5th Cir. 2001) (quoting *Jackson v. Johnson*, 194 F.3d 641, 652 (5th Cir. 1999)).

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991).

In this case, petitioner's attorney did not challenge or strike jurors Dahl and Campbell either by use of a peremptory challenge or challenge for cause. Because no objection was made to the impanelment of these jurors, any error in their selection as jurors was waived at the state level. *See* Tex. R. App. P. 33.1(a)(1); *Vasquez*, 189 S.W.3d at 759. Federal habeas review of any claims relating to whether these jurors were fit to serve on the jury is thus procedurally barred. *See Coleman*, 501 U.S. at 750, 111 S.Ct. at 2565; *see Francis v. Henderson*, 425 U.S. 536, 542, 96 S.Ct. 1708, 1711, 48 L.Ed.2d 149 (1976) (holding an objection to the composition of a grand jury panel that is barred by a state procedural rule is waived and cannot be raised in a collateral attack upon a conviction). Petitioner has not demonstrated cause for the default or actual prejudice as a result of Dahl's and Campbell's impanelment on the jury. *See Coleman*, 501 U.S. at 750, 111 S.Ct. at 2565. Review of whether these jurors were biased is procedurally barred.

### *2. Composition of the Jury Pool*

In his third subpoint of error, petitioner complains "Not one single person in the 55 who appeared on Applicant's jury venire was Black." (*Memo*, pg. 14). The record does not reflect the number of people who appeared for jury duty on the day of voir dire. Nor does the record reflect the racial composition of the jury pool. The record does reflect, however, that neither party moved to strike the jury panel.

A criminal defendant "is entitled to require that the State not deliberately and systematically deny to members of his race the right to participate as jurors in the administration of justice." *Alexander v. Louisiana*, 405 U.S. 625, 628-29, 92 S.Ct. 1221, 1224, 31 L.Ed.2d 536 (1972). Thus, where proof of discrimination in violation of the Fourteenth Amendment has been brought forth and

not rebutted, the conviction must be set aside.  *See Rideau v. Whitley*, 237 F.3d 472, 484 (5th Cir. 2000), *cert. denied*, 533 U.S. 924, 121 S.Ct. 2539, 150 L.Ed.2d 708 (2001).

While habeas corpus review of such claims is possible, a petitioner must prove discrimination under the standards set out by the Supreme Court.  To prove discrimination, the petitioner must, *inter alia*, prove the degree of under-representation of the racial group.  *Castaneda v. Partida*, 430 U.S. 482, 494, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498 (1977) (dealing with racial discrimination in grand jury selection); *see Alexander*, 405 U.S. at 627, 92 S.Ct. at 1223 n. 3 (establishing "[t]he principles that apply to the systematic exclusion of potential jurors on the ground of race are essentially the same for grand juries and for petit juries.").  A petitioner can do this by one of two methods.  First, a petitioner can establish under-representation by demonstrating a statistical disparity between the total population to the proportion called to serve on the jury.  *Castaneda*, 430 U.S. at 494, 97 S.Ct. at 1280.  Second, a petitioner can establish under-representation by showing a disparity in the jury pool *and* proving that "(1) the selection process was itself not racially neutral and presented an opportunity for discrimination, or that (2) the jury commissioners had made no attempt to acquaint themselves with eligible members of the African-American community."  *Rideau*, 237 F.3d at 485 (citing *Castaneda*, 430 U.S. at 493-94, 97 S.Ct. at 1280).

First, because Montez's attorney failed to make a motion to strike the jury panel, any error regarding the racial composition of the pool from which the jury was selected is waived.  *See* Tex. R. App. P. 33.1(a)(1).  Petitioner has not attempted to demonstrate cause for the failure to make such a motion or prejudice resulting from such failure.  This claim is therefore not reviewable by this Court.  *See Coleman*, 501 U.S. at 750, 111 S.Ct. at 2565.

Moreover, petitioner has totally failed to prove any discrimination because he has not shown any under-representation. *See Castaneda*, 430 U.S. at 494, 97 S.Ct. at 1280. There is no evidence on the record whatsoever establishing no African-Americans were present on the day of voir dire. Therefore, were this claim reviewable by the Court, it would be meritless. *See Ross*, 694 F.2d at 1011 (holding "[a]bsent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value.").

### 3. *Error During State Habeas Corpus Proceedings*

In his fourth subpoint of error, petitioner contends the State failed to properly answer a ground of error raised in his state habeas corpus application. Specifically, Montez complains the State did not answer his contention that no Black people were part of the jury pool. "[A]n attack on the state habeas proceeding is an attack on a proceeding collateral to the detention and not the detention itself." *Rudd v. Johnson*, 256 F.3d 317, 320 (5th Cir. 2001). Therefore, the rule in this circuit is that "infirmities in state habeas proceedings do not constitute grounds for federal habeas relief." *Moore v. Dretke*, 369 F.3d 844, 846 (5th Cir. 2004) (quoting *Duff-Smith v. Collins*, 973 F.2d 1175, 1182 (5th Cir. 1992)). Montez's complaints about errors that occurred during his state habeas corpus proceedings are not cognizable on federal habeas corpus review. *See id.*

### D. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

In his fourth point of error, Montez contends he received ineffective assistance of counsel at trial. Specifically, Montez complains,

1. The trial attorney failed to review and investigate the audio and video recording of the police car in which he was detained.

In response to some of the allegations petitioner made in his state habeas corpus application,

petitioner's trial attorney completed and filed an affidavit, which was attached to the State's response to Montez's application.  Montez contends within this point of error (in subpoints 2, 3, 4, 5 and 8) that the attorney's responses were unreasonable in the following areas:

    2.     Regarding interviewing J.C. Penney employees,

    3.     Regarding reviewing the security video surveillance,

    4.     Regarding juror selection,

    5.     Regarding the pre-trial motions, and

    8.     Regarding adequate trial preparation.

    6.     The trial attorney failed to object to incorrect statements made by the prosecution during trial.

    7.     The trial attorney did not research or adequately prepare for trial.

*1.  Standard of Review*

The proper standard for judging a petitioner's contention he is entitled to relief on the ground his trial counsel rendered ineffective assistance is enunciated in *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984).  Under the two-pronged *Strickland* standard, a petitioner must show defense counsel's performance was both deficient and prejudicial.  *Id.* at 687, 104 S.Ct. at 2064.  An attorney's performance was deficient if the attorney made errors so serious he or she was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment to the United States Constitution.  *Id.*, 104 S.Ct. at 2064.  That is, counsel's performance must have fallen below the standards of reasonably competent representation as determined by the norms of the profession.  A reviewing court's scrutiny of trial counsel's performance is highly deferential, with a strong presumption counsel's performance falls within the wide range of reasonable professional assistance.  *Id.* at 689, 104 S.Ct. at 2065.

Additionally, a petitioner must show counsel's deficient performance prejudiced the defense.  To establish this prong, a petitioner must show counsel's errors were so serious as to deprive petitioner of a fair trial.  *Id.* at 687, 104 S.Ct. at 2064.  Specifically, to prove prejudice a petitioner

must show "(1) there is a reasonable probability that, but for counsel's unprofessional errors, the ultimate result of the proceeding would have been different . . . and (2) counsel's deficient performance rendered the trial fundamentally unfair." *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993). A showing of significant prejudice is required. *Spriggs v. Collins*, 993 F.2d 85, 88 n. 4. (5th Cir.1993).

### 2. Failure to Investigate

In his first subpoint of error, petitioner contends his trial attorney failed to review and investigate the video and audio recording of the police car in which he was detained. A petitioner alleging inadequate investigation must show what such investigation would have uncovered and how his defense would have benefitted. *Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993); *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986). A petitioner cannot "simply allege but must affirmatively prove prejudice" when complaining of counsel's failure to investigate. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992).

In this case, petitioner has failed to demonstrate deficiency or prejudice. *See Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. First, as discussed in section IV.B.2, above, petitioner cannot establish what the police car camera would have recorded. Petitioner's allegation that the recording would have verified Officer Sanders did not give him his *Miranda* warnings is unsupported in the record, and Montez offers no evidence other than his bare allegation to support this contention. *See Ross*, 694 F.2d at 1011. Petitioner's trial attorney cannot be found deficient for failing to review a tape that may or may not exist and that may or may not be mitigating. *See Strickland*, 466 U.S.

at 687, 104 S.Ct. at 2064.

Moreover, petitioner has failed to demonstrate he suffered any prejudice. As discussed in section IV.A.1, above, no self-incriminating statements made by Montez to the police were admitted at trial. Therefore, *Miranda* was not violated even if Montez never received the warnings. *See Duckworth*, 492 U.S. at 203, 109 S.Ct. at 2880. Consequently, even if petitioner's trial attorney was deficient in his representation, Montez did not suffer any prejudice as a result. This subpoint of error is meritless.

### 3. Errors in Trial Counsel's Response to State Habeas Corpus Proceedings

In his second, third, fourth, fifth, and eighth subpoints of error, petitioner complains his trial attorney's responses to various allegations raised in the state habeas corpus application were either deficient or unreasonable.

As set forth in section IV.C.3 above, "infirmities in state habeas proceedings do not constitute grounds for federal habeas relief." *Moore*, 369 F.3d at 846 (quoting *Duff-Smith v. Collins*, 973 F.2d 1175, 1182 (5th Cir. 1992)). Montez's complaints about errors that occurred during his state habeas corpus proceedings are not cognizable on federal habeas corpus review. *See Moore*, 369 F.3d at 846.

### a. Failure to Interview Witnesses

Even were the claims construed as direct attacks on trial counsel's representation rather than attacks on state habeas corpus proceedings, petitioner would not be entitled to relief. In his second subpoint, petitioner contends his attorney should have interviewed and presented at trial J.C. Penney's employees working on the day of the robbery to testify on behalf of Montez. Assuming petitioner's attorney should have spoken with such employees, Montez has not demonstrated that

any such testimony would have been beneficial to his defense. *See Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. Having failed to prove any prejudice, the claim would fail.

### b. Failure to Review Security Camera Footage

In his third subpoint, petitioner complains of the trial attorney's failure to secure and review the security camera footage from J.C. Penney's on the day of the robbery. As discussed in section IV.A.4 above, testimony at trial was that the security camera footage was not relevant because it was not fixed on the area where the shoplifting occurred. (RR, vol. 3, pg. 44). Petitioner has not presented anything to cast doubt on that testimony. Montez's trial attorney cannot be held deficient for failing to review videotapes he did not have access to and that did not reveal anything relevant to the crime. *See Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. Additionally, Montez cannot demonstrate he was prejudiced by his attorney's failure to review tapes that did not contain any footage relevant to the robbery. *See id.*

### c. Failure to Object to Jurors

In his fourth subpoint of error, petitioner complains of the selection of jurors Dahl and Campbell. First, Montez has failed to demonstrate deficient performance. His attorney spent several minutes thoroughly questioning members of the venire panel. He exercised all ten peremptory strikes. (CR, vol. 1, pg. 28). In an affidavit attached to the State's answer in response to Montez's state habeas corpus application, Montez's attorney stated, "Mr. Montez claims that I failed to strike at his request during voir dire two jurors with friends or relatives on various police forces. Mr. Montez participated fully in the decision of who to strike during jury selection. I struck all the jurors that Mr. Montez requested." (State Habeas Corpus Record, pg. 117). In his response to the respondent's answer, petitioner states he in fact told his attorney to strike the two jurors.

Even if the Court accepts petitioner's statement, both jurors answered they could serve on the jury despite their affiliations with law enforcement personnel.  (RR, vol. 2, pgs. 47, 62).  Petitioner has failed to demonstrate why his attorney was deficient for believing their testimony.  *See Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.

Additionally, petitioner has failed to demonstrate he suffered any prejudice from the jurors' impanelment.  Assuming his attorney should have exercised the peremptory strikes against Dahl and Campbell instead of two of the venirepersons he struck, petitioner has not demonstrated the verdict would have been any different.  *See United States v. McCord*, 695 F.2d 823, 828 (5th Cir. 1983) (holding a juror's official position as a member of the law enforcement community does not justify the conclusion the juror is biased, especially when the juror has stated he can be impartial).

### d.  Failure to Argue Pre-Trial Motions and Review Evidence

In his fifth and eighth subpoints of error, petitioner complains of his trial attorney's failure to argue pre-trial motions regarding the admission of the clothes he was wearing at the time of arrest, the *Miranda* warning, and the identification procedures.  Petitioner has not demonstrated deficient performance.  As discussed in section IV.A.5, there was a proper chain of custody of the clothes admitted at trial.  Montez's attorney is not deficient for failing to make a meritless argument and/or objection.  *See Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) (holding an attorney does not render ineffective assistance by failing to make futile motions or objections).

With respect to the *Miranda* issue, as discussed in section IV.A.1, there were no self-incriminating statements introduced at trial.  Petitioner's trial attorney was not deficient for failing to file a motion and/or obtain a tape whose existence is unknown and whose contents were irrelevant to the trial.  *See Duckworth*, 492 U.S. at 203, 109 S.Ct. at 2880 (holding a constitutional

violation arises only when incriminating statements made by the defendant who has not received the *Miranda* warnings are used against the defendant at trial).

The absence of a police car recording also impacts Montez's ability to demonstrate his attorney was deficient regarding the identification procedure. Assuming the tape did exist and his attorney was deficient in failing to obtain it, petitioner cannot demonstrate how he was prejudiced by the show-up identification. *See* section IV.A.3 *supra; Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.

In sum, contentions regarding trial counsel's response to arguments made in state habeas corpus proceedings are not cognizable on federal habeas corpus review. Construing petitioner's claims very liberally and reading the subpoints of error as direct challenges to trial counsel's conduct, petitioner's claims are meritless.

### 4. Failure to Object at Trial

In his sixth subpoint of error, petitioner complains his trial attorney failed to object to incorrect statements made by the prosecution during trial. Specifically, the prosecutor stated at two points during the trial that Montez described himself to the police as weighing 150 pounds and standing at 5'7" tall. (RR, vol. 3, pgs. 180-81, 194). Montez contends he never testified at trial and the prosecution therefore improperly attributed the description as coming directly from Montez.

The following occurred during Officer Sanders's testimony:

Q.    The personal information, the height, weight, the identifying numbers, you said that you put on this form, where do you obtain that information from?

A.    If it's possible, we typically ask the person who's being arrested all of their information, and not only does it make it accurate because people always change hair colors, they're always changing weight. It's different all the time, so we want to make sure that information is accurate.
      Ask them if they're willing to give it to us. If not, that information typically

can be obtained by looking at them.  Obviously, we're getting it off their driver's license, the height and weight is listed on that.

Q.      And in this situation, do you recall the height and weight of the suspect in this case?

A.      I believe it was five-seven, 150 pounds.

(*Id.*, pgs. 105-06)

Montez has failed to meet either prong of the *Strickland* test.  First, the testimony was not clear as to the exact source of Montez's weight and height on the day of the robbery.  A reasonable interpretation of the testimony is that Montez may have described himself to the police as 150 pounds, 5'7", or the police may have obtained the information from his driver's license.  The Court cannot hold Montez's trial attorney deficient for failing to object to a reasonable and un-objectionable interpretation of the testimony.  *See Turner v. Quarterman*, 481 F.3d 292, 298 (5th Cir.), *cert. denied* 551 U.S. 1193, 128 S.Ct. 34, 168 L.Ed.2d 810 (2007) (stating for an attorney to have been deficient in failing to object, a petitioner must demonstrate the objection would have had merit under Texas law).

Even if Montez's attorney was somehow deficient in not objecting to the statements, petitioner has not established he suffered any prejudice from that failure.  Had Montez's attorney objected and had the trial court sustained the objection, the only difference in the testimony would have been for the officer to explicitly say the source of the information, whether it was Montez himself or another source, such as the officer's observations or Montez's drivers license.  Montez's physical description itself on the day of the arrest was the most important part of the prosecutor's statements, not the source of that description.  There is no reasonable probability that, had Montez's attorney objected, the result of the proceeding would have been different or that the failure to object

rendered the trial fundamentally unfair.  *See Creel*, 162 F.3d at 395.  This point of error is without merit.

### 5.  Failure to Prepare

In his seventh subpoint of error, petitioner contends his trial attorney did not adequately prepare for trial because twice during the trial the attorney asked for copies of the police reports from the State.  (RR, vol. 3, pgs. 117, 159).

Under Texas law, police arrest and offense reports are not generally subject to production. *Brem v. State*, 571 S.W.2d 314, 322 (Tex. Crim. App. 1978); *Holloway v. State*, 525 S.W.2d 165 (Tex. Crim. App. 1975); *see* Tex. Code Crim. Proc. Ann. art. 39.14.  Such reports "are the work product of the police and are exempt from pre-trial discovery."  *Brem*, 571 S.W.2d at 322.  A police officer may use his police report at trial to refresh his memory, as long as the report is made available to the defendant for cross-examination and possible impeachment purposes.  *McCloud v. State*, 494 S.W.2d 888, 832 (Tex. Crim. App. 1973).

Montez's trial attorney was not deficient for failing to obtain reports to which he was not entitled.[5]  *See* Tex. Code Crim. Proc. Ann. art. 39.14; *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. Even assuming *arguendo* some deficiency, petitioner has not made a showing that the information

---

[5]  In his response to respondent's answer, petitioner states,

> If counsel is not entitled to preliminary police reports prior to trial as alleged by Director, why did counsel prior to trial send Applicant a copy of two police reports from Sanders #1035 and Slay # 368 with case number 2006-00071054; case description - Robbery; Dated 6-12-06.  Counsel deliberately chose to review only limited police reports instead of all reports involved in alleged offense.

(*Reply Brief*, doc. #27, filed Sep. 22, 2009, pg. 21).

Giving petitioner the benefit of the doubt, and assuming his attorney did have access to police reports before trial, petitioner's argument does not help his cause.  If his attorney had access to the reports of the two main officers who testified at trial, then his contention that his attorney did not adequately prepare for trial seems all the more improbable. The allegation that the attorney reviewed some of the police reports but not others is completely unsupported in the record.  *See Ross*, 694 F.2d at 1011.  Even assuming petitioner is correct, and his attorney selectively reviewed only some of the police reports, Montez has still failed to meet either prong of the *Strickland* test.

contained in the police reports was in any way exculpatory or how access to the reports before the trial would have otherwise benefitted his defense. *See Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. Montez has failed to demonstrate he was prejudiced. *See id.* This ground of error is without merit.

## E. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

In his eighth point of error, petitioner Montez claims he received ineffective assistance of appellate counsel. Specifically, Montez contends his appellate attorney failed to do the following:

1. Argue the State offered no physical evidence supporting one of the police officer's testimony.

2. Argue the State offered no physical evidence of words attributed to Montez by one of the police officers.

3. Argue the State withheld exculpatory evidence.

4. Argue the State did not produce evidence of Montez at the J.C. Penney's store.

5. Argue Montez did not match Stubblefield's description of the robber.

6. File a motion for a rehearing when the intermediate court of appeals affirmed the conviction.

7. Argue more than the one ground of error, based on factually insufficient evidence, in the appeal.

### 1. Standard of Review

A defendant has a constitutional right to effective assistance of counsel on first appeal. *Hughes v. Booker*, 220 F.3d 346, 348 (5th Cir. 2000). Where a petitioner argues counsel failed to assert or fully brief a particular claim on appeal, he must meet both prongs of the *Strickland* test, i.e., he must show his attorney's performance was both deficient and prejudicial. *Id.* (citing *Penson v. Ohio*, 488 U.S. 75, 84, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988)).

Counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687-88, 104 S.Ct. at 2064.  The appellate attorney need not raise every nonfrivolous ground available on appeal.   *Amador v. Quarterman*, 458 F.3d 397, 410 (5th Cir. 2006).  Counsel's performance is prejudicial if, but for the appellate attorney's unreasonable failure to raise an issue, the defendant would have prevailed on his appeal.  *Smith v. Robbins*, 528 U.S. 259, 285, 120 S.Ct. 746, 764, 145 L.Ed.2d 756 (2000).

*2.   Failure to Address a Lack of Evidence*

In his first, second, and third subpoints of error, petitioner complains his appellate attorney failed to address the lack of evidence supporting Officer Sanders's testimony regarding the *Miranda* warning and identification procedure.  In his fourth point of error, petitioner complains his appellate attorney failed to argue the State did not produce evidence from security camera footage establishing Montez was the robber.  On appeal, Montez's attorney urged the evidence was factually insufficient to support the verdict.

As discussed in section IV.A.1, there was no violation of *Miranda* because no incriminating statements were attributed to Montez and used against him at trial.  *See Smith*, 7 F.3d at 1170; *Harrell*, 894 F.2d at 125.  As discussed in section IV.A.3, even if the show-up identification was improper, the in-court identification of Montez as the robber by Mr. Stubblefield was reliable.  *See Brathwaite*, 432 U.S. at 114, 97 S.Ct. at 2253.   Montez's claim that Officer Sanders called Stubblefield and gave him Montez's description prior to the identification is rebutted by the record. Also, as discussed in section IV.A.4, there is nothing in the record supporting Montez's contention that any relevant and mitigating security camera footage existed.

In short, as discussed *supra*, these claims Montez says his appellate attorney should have

raised were meritless.  The appellate attorney was not deficient for failing to raise them.  *See Smith*, 528 U.S. at 285, 120 S.Ct. at 764.  Moreover, Montez has not shown the result of his appeal would have been different had the attorney raised these issues.  *Id.*, 120 S.Ct. at 764.  These subpoints of error are without merit.

### 3.  Failure to Address Description Discrepancies

In his fifth and sixth subpoints of error, Montez complains of his appellate attorney's failure to argue he did not match the description of the robber given by Stubblefield and of the failure to file a motion for rehearing when the appellate court affirmed the conviction (based on the description issue).  Section IV.A.2 addresses why this argument has no merit.  Petitioner's complaint is based only upon the robber's description as recalled by Officer Sanders.  Officer Sanders's recollection of the description, however, was different from the recollection of Stubblefield, Officer Gallegos, and Officer Taylor, all of whom remembered Montez matched the description of the robber.

As is the case under federal law, under Texas law any conflict in the testimony is for the jury's resolution. The state appellate court which reviewed Montez's appeal would have been unable to question which version of facts the jury believed.  *See Sterquell v. Scott*, 140 S.W.3d 453, 461 (Tex. App.—Amarillo 2004, no pet.).  The jury heard testimony Montez matched Stubblefield's description of the robber.  Any argument on direct appeal regarding Officer Sanders's recollection of the robber's description would have been frivolous because the jury's determination to not believe Officer Sanders's recollection, and believe the other officers and Stubblefiled instead, was determinative.  *See id.*  Montez's appellate attorney's decision to not raise this issue was not deficient.  *See Smith*, 528 U.S. at 285, 120 S.Ct. at 764.  The decision not to raise the issue in a

motion for rehearing was likewise not deficient.  *See id.*; *Strickland*, 466 U.S. at 668, 104 S.Ct. at 2064.  Moreover, Montez has not shown the result of his appeal would have been different had the attorney raised the issue, either initially or in a motion for rehearing, as the appellate court's precedence is to defer to the jury.  *See Sterquell*, 140 S.W.3d at 461; *Strickland*, 466 U.S. at 668, 104 S.Ct. at 2064.

### 4. Failure to Raise More Points of Error

In his seventh subpoint of error, Montez complains his appellate attorney should have raised all the grounds of error that he has raised in his federal habeas corpus petition.  As discussed throughout this Report and Recommendation, none of the grounds of error raised by petitioner in the instant habeas corpus petition have any merit.  While his attorney could have raised these points of error, doing so would have been futile.  Petitioner has failed to demonstrate deficient performance or prejudice.  *See Smith*, 528 U.S. at 285, 120 S.Ct. at 764; *Strickland*, 466 U.S. at 668, 104 S.Ct. at 2064.  This subpoint of error must fail.

### F.  STATE MISCONDUCT

In his fifth and ninth grounds of error, petitioner Montez makes allegations of State misconduct during the trial and on direct appeal that he contends violated his constitutional rights.  In his fifth point of error, Montez contends the State:

1. Deceived the grand jury in order to obtain a faulty indictment.

2. Made improper and prejudicial statements during voir dire.

3. Deceived the trial court and jury.

4. Knowingly used false testimony.

5. Withheld exculpatory evidence.

6.      Introduced prejudicial evidence at trial.

7.      Knowingly used false evidence.

8.      Improperly used evidence.

9.      Used a tainted in-court identification.

10.     Encouraged police officers to overstate the facts of the case.

11.     Tampered with evidence.

12.     Failed to offer physical evidence supporting the conviction.

13.     Stated Montez had said something that he, in fact, had not said.

14.     Compelled Montez to give evidence against himself.

15.     Made improper comments to the jury.

In his ninth ground of error, Montez contends the State committed error on direct appeal by:

1.      Improperly arguing Montez used a box cutter to threaten Stubblefield, when the jury found Montez did not use the box cutter in a threatening fashion.

2.      Falsifying Stubblefield's testimony.

## 1.  Standard of Review

The standard for granting habeas relief because of prosecutorial misconduct is "the narrow one of due process, and not the broad exercise of supervisory power." *Derden*, 978 F.2d at 1460. A prosecutor's statements or actions may violate due process in two ways: (1) the misconduct may directly implicate a specific provision of the Bill of Rights, or (2) the misconduct, while not directly violating a specific constitutional right, may nevertheless constitute a general denial of due process. *Rogers v. Lynaugh*, 848 F.2d 606, 608 (5th Cir. 1988).

Relief will be granted for a general due process violation only where the misconduct resulted in the denial of the defendant's right to a fair trial. *Id.* at 608-09. A trial will be deemed

fundamentally unfair only if "there is a reasonable probability that the verdict might have been different had the trial been properly conducted." *Barrientes*, 221 F.3d at 753. Thus, the touchstone of a due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 947, 71 L.Ed.2d 78 (1982). Prosecutorial misbehavior alone does not constitute a wrong of constitutional dimension and does not warrant habeas corpus relief. *Id.* at 220, 102 S.Ct. at 948.

In this case, petitioner never contends prosecutorial misconduct violated any specific constitutional right. Instead, petitioner's arguments appear to advance a theory that such misconduct resulted in a general denial of due process. *See Rogers*, 848 F.2d at 608. Where a specific constitutional right could be implicated, the Court has liberally construed the pleading in this case to raise a specific constitutional challenge. The Court evaluates all other claims of prosecutorial misconduct under the general due process standard.

## 2. *Faulty Indictment*

In the first subpoint of the fifth point of error, Montez complains the State "deceived the Grand Jury to obtain a faulty indictment by fabricating a box cutter as a deadly weapon. State then with his own mouth admitt [sic] that the box cutter put into evidence is not a deadly weapon." (*Memo*, pg. 20). "[T]he sufficiency of a state indictment is not a matter for federal habeas corpus relief unless it can be shown that the indictment is so defective that the convicting court had no jurisdiction." *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985) (quoting *Linder v. Phelps*, 731 F.2d 1201, 1203 (5th Cir. 1984)).

First, the indictment in this case is not faulty. Petitioner raised in his state habeas corpus application an argument identical to the one here, i.e., that the indictment was faulty based on

prosecutorial misrepresentation.  The Texas Court of Criminal Appeals, by denying the habeas corpus application without written order, has necessarily, though not expressly, held the Texas courts had jurisdiction and the indictment was sufficient for that purpose.  *See id.* at 599. Accordingly, as far as federal habeas corpus review is concerned, the indictment was not faulty.

Moreover, petitioner's argument the prosecutor admitted the box cutter was not a deadly weapon is incorrect.  At trial, outside the jury's presence during the charge conference, the prosecutor stated:

> We have -- the State has requested the lesser-included charge on robbery. We believe the jury can reasonably conclude from the evidence that the box cutter knife that's been put in evidence is not a deadly weapon, and if they believe that still with a non-deadly weapon they [sic] threatened him and he threatened him with bodily injury to Bobby Stubblefield, they could still find the Defendant guilty of robbery and only robbery.

(RR, vol. 3, pgs. 187-88).  During closing arguments, however, the prosecutor argued the box cutter was a deadly weapon.  (*Id.*, pgs. 196-99).  After speaking on the subject, the prosecutor stated,

> We've put on the evidence and now it's your duty to go back and decide these issues and we believe that he has committed theft, plus the threat of imminent bodily injury, making it a robbery.  And we think this is a deadly weapon in the way in which he used it and exhibited it, and we believe he's guilty of aggravated robbery.

(*Id.*, pg. 199).

The prosecutor's concern about charging the jury on the lesser included offense did not constitute prosecutorial misconduct, especially in light of the fact that the prosecution consistently argued to the jury the box cutter was a deadly weapon.  *See Fransaw v. Lynaugh*, 810 F.2d 518, 529 (5th Cir.), *cert. denied*, 483 U.S. 1008, 107 S.Ct. 3237, 97 L.Ed.2d 742 (1987) (noting it is generally accepted that a jury may find a defendant guilty of a lesser offense when the indictment charges a more aggravated degree of the offense).  Just because the jury ultimately only found Montez guilty

of robbery does not mean the prosecutor engaged in misconduct in obtaining an indictment on aggravated robbery. In any event, the ultimate guilty conviction cured any error that occurred at the grand jury level. *See United States v. Mechnik*, 475 U.S. 66, 70, 206 S.Ct. 938, 941, 89 L.Ed.2d 50 (1986) (a jury's guilty verdict renders harmless any error in the grand jury's charging decision); *Barrientes*, 221 F.3d at 753 (holding prosecutorial misconduct violates a defendant's constitutional rights only if "there is a reasonable probability that the verdict might have been different" without the purported misconduct). This ground of error is without merit.

### 3. Improper Jury Argument

In his second, thirteenth, and fifteenth subpoints of error under the fifth point of error, petitioner complains of inappropriate statements made by the prosecution. Under Texas law, if the prosecution makes improper statements, then the offended party must object when the improper comment is made. *See Dow Chemical Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). If the offended party does not object, the complaint is not preserved for review on direct appeal. *Id.* Consequently, if the offended party did not object to improper prosecutorial arguments at trial, then any federal habeas corpus claim based upon the allegedly improper arguments is procedurally defaulted under the Texas contemporary objection rule. *See, e.g., Barrientes*, 221 F.3d at 779.

In this case, petitioner's trial attorney did not object to any of the statements Montez now challenges. Because the trial attorney did not object at the time the statements were made, complaints about those statements were not preserved for direct appeal. *See Francis*, 46 S.W.3d at 241. Consequently, because of the contemporaneous objection rule, these arguments are all procedurally defaulted. *See Barrientes*, 221 F.3d at 779. Further, even if these claims were not procedurally defaulted, they would fail.

A federal court may grant habeas relief only if the prosecutor's argument or statement was improper and "so prejudicial that the state court trial was rendered fundamentally unfair within the meaning of the Due Process Clause of the Fourteenth Amendment." *Jones v. Butler*, 864 F.2d 348, 356 (5th Cir. 1988). In determining prosecutorial misconduct claims based on something a prosecutor said, a reviewing court must (1) assess whether the prosecutor made an improper remark, and (2) ask whether the defendant was prejudiced. *United States v. Davis*, 609 F.3d 663, 677 (5th Cir. 2010). In evaluating whether the defendant was prejudiced, the reviewing court looks to three factors: (a) the magnitude of the prejudicial effect of the remarks; (b) the efficacy of any cautionary instruction given by the judge; and (c) the strength of the evidence supporting the conviction. *Id.*; *Styron*, 262 F.3d at 449.

Under Texas law, when prior felony convictions are alleged for purposes of enhancement, the enhancement paragraphs generally may not be read to the jury until the punishment phase of trial. Tex. Code Crim. Proc. Ann. art. 36.01(a)(1). The statute does not, however, prevent the trial court or prosecutor from informing the jury pool during voir dire in hypothetical terms of the applicable range of punishment if the State proves any prior convictions for enhancement purposes. *Frausto v. State*, 642 S.W.2d 506, 509 (Tex. Crim. App. 1982).

Montez complains the prosecutor, during voir dire, made improper prejudicial statements by suggesting petitioner had been twice convicted of committing a felony. During voir dire, the prosecutor discussed the different degrees of felonies. (RR, vol. 2, pg. 39). He then discussed the punishment range for those with prior felony convictions:

> In a hypothetical first-degree felony case, that's the range. However, at the punishment phase, if a jury -- it is proven beyond a reasonable doubt to the jury at the punishment phase that this person they have convicted of a first-degree felony has previously been convicted beforehand of a felony in the past, what's the range

then?  Is it the same? . . . I bet you can guess that it's not.

(*Id.*, pgs. 39-40).  The prosecutor then asked whether it was fair that the punishment range was increased for an habitual offender.  (*Id.*, pg. 40).  The prosecutor never stated Montez was an habitual offender.  Rather, he informed the jury in hypothetical terms of the punishment range should a jury find a defendant to be an habitual offender at the conclusion of the punishment phase of trial.  (*See id.*, pgs. 39-40).  This is allowed under Texas law.  *See Frausto*, 642 S.W.2d at 509.  More relevant for federal habeas corpus purposes, the prosecutor's remarks did not reference Montez specifically, were only in hypothetical terms, and were based entirely upon what a jury's future determinations may have been.  Consequently, while this is an area the prosecutor should venture into with great care, the prosecutor's comments did not render the trial fundamentally unfair.  *See Jones*, 864 F.2d at 356.

Montez also complains the prosecutor improperly suggested during his closing arguments the jury should punish Montez "on the lower range," which comments, Montez contends, were designed to secure a robbery conviction.  (*Memo*, pg. 25).  During closing arguments at trial, the prosecutor stated:

> If you believe that these circumstances suggest that there are a lot worse robberies, you will have the opportunity to tell us that at the appropriate time, which is at the punishment phase.
> And you may get to that point and say, "You know, this wasn't as -- you know, I can imagine a lot worse.  And I may hear additional evidence, both pro and con to induce me to believe he should be punished on the lower range."
> . . .
> If those facts are true, then he's guilty of the crime.  Then we can go to another proceeding where you can decide and tell us, "Well, okay, but it wasn't that bad, and so we'd like to see him punished on a lower end."  That's appropriate, but do it at the appropriate time.

(RR, vol. 3, pgs. 211-12).

These statements did not render the trial fundamentally unfair.  *See Jones*, 864 F.2d at 356. Indeed, Montez's contention the argument was "calculated to secure a robbery conviction," appears inaccurate because at the time the argument was made, the prosecution was seeking a conviction for the more serious offense of aggravated robbery.  In any event, the prosecutor's argument was proper in seeking to secure a guilty verdict, and Montez's constitutional rights were not violated. This ground of error is without merit.

Montez also complains the prosecutor "improperly attributed words to Applicant's mouth, when Applicant had not said such words because Applicant did not testify." (*Memo*, pg. 24).  As discussed in section IV.D.4, at trial Officer Taylor testified Montez was reported as standing at 5'7" and weighing 150 pounds.  (RR, vol. 3, pgs 105-06).  It is unclear from this testimony whether Montez told the police officer this information or if the officer got the information from some other source.  (*See id.*).  Once when making an objection and once in closing arguments, the prosecutor said Montez had given police officers his height and weight.  (*Id.*, pgs. 180-81, 194).

Because the source of Montez's height and weight was not clear from the trial testimony, this Court is unable to conclude the remarks by the prosecutor were improper.  *See Davis*, 609 F.3d at 677.  In any event, as explained in section IV.D.4, assuming the prosecutor's statements were improper, Montez has not demonstrated how he suffered any prejudice from the statements.  *See id*. The source of the information was not as important as the information itself, and Montez does not contend the information itself was incorrect.  *See id*.  Montez's attorney did not object to the statements, so the trial court did not give any cautionary instruction, but the strength of the evidence supporting the conviction, as discussed in section IV.A.2, was constitutionally sufficient.  *See id*. This ground of error is without merit.

*4.* Brady *Violations*

In the third, fifth, and twelfth subpoints of error under the fifth point of error, Montez complains the State erred by withholding evidence. All criminal defendants have a constitutionally protected privilege to request and obtain from the prosecution evidence that is either material to the guilt of the defendant or relevant to the punishment to be imposed. *Trombetta*, 467 U.S. at 485, 104 S.Ct. at 2532 (citing *Brady v. Maryland*, 373 U.S. at 87, 83 S.Ct. at 1196). "Even in the absence of a specific request, the prosecution has a constitutional duty to turn over exculpatory evidence that would raise a reasonable doubt about the defendant's guilt." *Id.*, 104 S.Ct. at 2532. This duty applies irrespective of the good or bad faith of the prosecution. *Banks v. Dretke*, 540 U.S. 668, 124 S.Ct. 1259, 1272, 157 L.Ed.2d 1166 (2004).

There are three elements of a *Brady* claim: (1) the evidence at issue must be favorable to the accused; (2) the State must have suppressed the evidence, and (3) prejudice must have ensued. *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 280, 119 S.Ct. at 1948. If the evidence could have put the whole case in such a different light as to undermine confidence in the verdict, the evidence is material. *Youngblood v. West Virginia*, 547 U.S. 867, 870, 126 S.Ct. 2188, 2190, 165 L.Ed.2d 269 (2006).

Montez complains the State deceived the Court and jury because it failed to produce the videotape of the police car camera, which would have contradicted Officer Sanders's testimony about reading petitioner his *Miranda* rights and the details about the show-up identification. By making this allegation, petitioner assumes a videotape from the police car at the time he was in it

existed at the time of trial and that the prosecution intentionally withheld the tape. There is nothing in the record, and petitioner has not otherwise offered anything apart from his own statements, supporting such an assumption. This assumption is insufficient to establish a viable *Brady* claim. *See Ross*, 694 F.2d at 1011. Petitioner has failed to prove the evidence even exists, much less that it was favorable to his position and that it was suppressed by the State. *See Strickler*, 527 U.S. at 281-82, 119 S.Ct. at 1948.

Even if the Court assumes (with no basis for doing so) that Montez meets the first and second elements of a viable *Brady* claim, Montez would fail on the third *Brady* prong regarding the *Miranda* claim. As discussed in section IV.A.1, there were no incriminating statements used against Montez at trial. Therefore, Montez suffered no prejudice from not having access to the tape at trial. *See id.*

Montez also complains the State violated *Brady* by failing to provide the security camera footage of J.C. Penney's on the day of the robbery. Evidence at trial affirmatively established the cameras did not record any part of the shoplifting or any image of the robber. (RR, vol. 3, pgs. 44, 75). Petitioner bases his argument on nothing more than his own, unsupported speculation that the security camera recordings contained relevant footage. Even without the testimony to the contrary, petitioner fails to demonstrate this evidence would have been favorable to the defense and that it was suppressed by the State. *See Strickler*, 527 U.S. at 281-82, 119 S.Ct. at 1948. This and all other *Brady* claims are without merit.

### 5. Knowingly Using False Evidence

In his fourth and seventh subpoints of the fifth point of error, petitioner complains of instances when, he contends, the prosecution knowingly relied upon false evidence. To establish

a due process violation based on the prosecutor's knowing use of false or misleading evidence, a petitioner must show (1) the evidence was false, (2) the evidence was material, and (3) the prosecution knew the evidence was false. *Nobles v. Johnson*, 127 F.3d 409, 415 (5th Cir. 1997).

> Even in cases of egregious prosecutorial misconduct, such as the knowing use of perjured testimony . . . [a new trial] is required only when the tainted evidence was material to the case. This materiality requirement implicitly recognizes that the misconduct's effect on the trial, not the blameworthiness of the prosecutor, is the crucial inquiry for due process purposes.

*Smith*, 455 U.S. at 220 n. 10, 102 S.Ct. at 947 n. 10.

Montez first avers the prosecution knowingly used Officer Sanders's false testimony that he informed Montez of his *Miranda* rights. Petitioner relies upon the fact that no physical evidence supporting the officer's testimony was introduced at trial in support of his argument. Montez additionally contends the prosecution knowingly used false evidence by presenting to the jury the clothes he was wearing when he was arrested. (*Memo*, pgs. 21-22). On this ground, he relies upon the reasoning that the prosecution failed to establish a chain of custody before introducing the evidence.

Montez has failed to demonstrate this evidence was false. *See Nobles*, 127 F.3d at 415. Apart from his unsupported allegations, there is nothing indicating Officer Sanders testified falsely about informing Montez of his *Miranda* rights. Montez's unsupported allegations are not sufficient to raise doubt about the testimony. *See Ross*, 964 F.2d at 1011. Regarding the clothing, there is nothing indicating the clothing introduced at trial was not the same clothing Montez was wearing at the time of arrest. Instead, all of the evidence indicates such clothing was the same. As discussed in section IV.A.5 above, the State established a chain of custody via the testimony of the arresting officer and the jailer.

Assuming, *arguendo*, the *Miranda* evidence was false, Montez has not demonstrated how it was material. *See Nobles*, 127 F.3d at 415. Again, even if Officer Sanders never informed Montez of his *Miranda* rights, there were no incriminating statements made by Montez which were admitted at trial. Any false testimony regarding reading the *Miranda* rights was immaterial. *See id.* In sum, Montez has failed to establish a due process violation. These points of error are meritless. *See id.*

### 6. Introduction of Clothing Worn at Time of Arrest

In his sixth subpoint of the fifth point of error, Montez complains the State erroneously introduced into evidence the clothing Montez was wearing at the time of arrest. Evidentiary errors occurring during trial are generally not cognizable on federal habeas corpus review. *See Derden*, 978 F.2d at 1458. Moreover, as established in section IV.B.3 above, there was no error in the admission of the clothing Montez was wearing at the time of arrest. Montez's contention that the State erred by relying on this evidence does not raise a constitutional question, and, if it does, no error occurred.

Put into the context of prosecutorial error, Montez has failed to establish any misconduct by the prosecutor. *See Rogers*, 848 F.2d at 608. The loss prevention officer testified Montez was the robber, and, apart from the clothing, there was testimony establishing Montez matched the robber's description and was discovered in a vehicle with the exact license plate number and matching the same description as the car in which the robber fled. Even had the State never offered the clothes into evidence, there was sufficient testimony establishing Montez was the robber. There is not a reasonable probability the verdict would have been any different had the clothing never been introduced. *See Barrientes*, 221 F.3d at 753. Were this ground of error cognizable on habeas

corpus review, it would be without merit.

### 7. Robber's Description

In his eighth subpoint of the fifth point of error, Montez again complains he did not match the description Stubblefield gave of the robber. Montez fails, however, to indicate how the prosecutor engaged in misconduct. Instead, he simply reurges that he did not match the description. As established in section IV.A.2, Montez's representation of the record inaccurately portrays as weak the State's evidence establishing he matched the robber's description. In fact, the State presented ample evidence establishing Montez matched the robber's description.

In any event, assuming Montez did not match the robber's description, petitioner has failed to argue how the prosecutor erred in eliciting testimony from people involved in the incident. Montez has not established prosecutorial misconduct violative of his due process rights. This ground of error is meritless.[6]

### 8. In-Court Identification

In the ninth and fourteenth subpoints of the fifth point of error, Montez contends the State erred in two in-court identifications. In his ninth subpoint, Montez complains the loss prevention officer's in-court identification of Montez as the robber was tainted by the improperly suggestive pre-trial identification. Montez again claims that Officer Sanders contacted Stubblefield, the loss prevention officer, and described Montez to Stubblefield. This claim is without factual support. Officer Sanders testified he contacted Stubblefield and had Stubblefield describe the robber, the stolen property, and the getaway car *before* the show-up identification. (RR, vol. 3, pgs. 99-100).

---

[6] Montez additionally contended "State's answer to allegations (f)(g)(h) on state habeas corpus is unreasonable and a flagrant lie." (*Memo*, pg. 22). "[I]nfirmities in state habeas proceedings do not constitute grounds for federal habeas relief." *Moore v. Dretke*, 369 F.3d at 846 (quoting *Duff-Smith*, 973 F.2d at 1182). Therefore, even if Montez's allegations were true, such claims would not be cognizable in habeas corpus. *See id.*

Montez complains, however, that the State failed to present physical evidence verifying Officer Sanders's version of events.

The Supreme Court has established the corrupting effect of a suggestive identification procedure must be weighed against five specific factors. *Brathwaite*, 432 U.S. at 98-99, 97 S.Ct. at 2245.  If the reviewing court suspects the initial identification is corrupted by improper procedure, then the in-court identification becomes suspect. *Id.*, 97 S.Ct. at 2245.  If, after reviewing the five factors, the reviewing court is assured the initial identification was not corrupted by the identification procedure, then the in-court identification is deemed reliable. *Id.*, 97 S.Ct. at 2245.

This Court has, in section IV.A.3, already discussed the five *Brathwaite* factors and determined the identification by Stubblefield of Montez was reliable.  Thus, the in-court identification was reliable. *See id.*, 97 S.Ct. at 2245.  Additionally, there is nothing in the record supporting Montez's bare allegation that Officer Sanders called Stubblefield and described Montez before the identification.  This claim alone is insufficient to create a cause of action. *See Ross*, 694 F.2d at 1011.  Montez has failed to demonstrate a due process violation. *See Rogers*, 848 F.2d at 608.  This ground of error remains without merit.

In his fourteenth subpoint, Montez avers the State improperly compelled him to give evidence against himself by forcing him to display the tattoos on his legs to the jury.  As previously discussed in section IV.B.5 above, Montez's Fifth Amendment rights were not violated when the trial court made him display his leg tattoos. *See Wade*, 388 U.S. at 233, 87 S.Ct. at 1930; *Tasco*, 835 F.2d at 1124.  The display did not amount to a self-incriminating statement prohibited by the Fifth Amendment. *See Wade*, 388 U.S. at 233, 87 S.Ct. at 1930.  Therefore, the State did not engage in any misconduct by seeking to have the trial court compel the tattoo display. *See Rogers*, 848 F.2d

at 608.  Because there was no prosecutorial misconduct, this ground of error is without merit.

### 9.  The Box Cutter

In his tenth and eleventh subpoints of the fifth point of error, Montez complains of the State's introduction and reliance upon the box cutter.  According to Montez, the State did not link him to the box cutter because it was not discovered in his possession.  Additionally, Montez contends, the State tampered with evidence by allowing one of its witnesses to handle the box cutter during trial.

At trial, Officer Michael Gallegos testified he retrieved the box cutter from the pocket behind the passenger seat, directly in front of where Montez was sitting at the time of the stop.  (RR, vol. 3, pgs. 136-37).  During the trial, Officer Sanders removed the box cutter from the evidence bag and demonstrated how it worked.  (*Id.*, pgs. 100-01).  Montez correctly argues fingerprint evidence from the box cutter was never admitted into evidence during the trial.

Petitioner's assertion that the State encouraged the police officers to overstate the facts has no basis in the record.  The officers never testified the weapon was discovered in Montez's possession.  Rather, the police officer who discovered the weapon testified to its location in the car in which Montez was a passenger.  (*Id.*, pgs. 136-37).  The officers likewise testified there were two other people in the vehicle with Montez.  (*Id.*, pg. 92).  Moreover, the record does not indicate petitioner's attorney ever sought to have the box cutter fingerprinted prior to trial.  Allowing a witness to handle evidence during the course of a trial is a widely accepted practice; it is not considered evidence tampering.  *See* Tex. Pen. Code Ann. § 37.09.

Even if the State had acted improperly, any misconduct did not impact the fairness of Montez's trial.  Witness Stubblefield's testimony was very detailed that Montez not only produced

a box cutter, but that he extended the blade of it and held it where Stubblefield could see it. (*Id.*, pg. 30). Further, the jury acquitted Montez of aggravated robbery, finding the box cutter was not a deadly weapon. Therefore, even if the State had engaged in any misconduct relating to the box cutter, such misconduct ultimately would not have resulted in a denial of Montez's right to a fair trial. *See Rogers*, 848 F.2d at 608. These grounds of error are without merit.

### 10. *State Misconduct on Direct Appeal*

In the first and second subpoints of the ninth point of error, Montez avers the State engaged in misconduct on direct appeal by making incorrect statements not supported by the record. A federal habeas corpus court only asks whether a challenged action violates a constitutional right. *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir.), *cert. denied* 510 U.S. 1025, 114 S.Ct. 637, 126 L.Ed.2d 596 (1993); *see* 28 U.S.C. § 2254(d).

Montez complains the State said, in its response to his direct appeal, that he threatened Stubblefield with a "box cutter weapon." (*Memo*, pg. 41). Montez argues that because the jury acquitted him of aggravated robbery, the State falsely argued Montez had used a weapon to threaten Stubblefield. Petitioner also argues the State falsified testimony by Stubblefield that Montez threatened Stubblefield because the record reveals Montez did not match the robber's description.

First, the Court has not found where the State ever referenced the "box cutter weapon" in its brief on direct appeal. Second, Montez was found guilty of robbery, which requires placing the victim in fear of imminent bodily injury or death. *See* Tex. Pen. Code Ann. § 29.02. After the jury's guilty verdict, whether Montez matched the robber's description was a moot point. He had been found guilty of placing Stubblefield in fear of imminent bodily injury; the State did not falsify anything by stating Montez had threatened Stubblefield.

Even if the State had misrepresented the facts on direct appeal, Montez has failed to demonstrate how either of these alleged misrepresentations impacted any of his constitutional rights. *See* 28 U.S.C. § 2254(d); *Pemberton*, 991 F.2d at 1223. The State appellate court clearly had the record before it, as it referenced the record several times in its opinion. Were there any error, it would be considered harmless. *See Montez*, 2008 WL 55113. These grounds of error are without merit.

## G.  TRIAL TESTIMONY

In his seventh point of error, Montez complains the State's witnesses at trial perjured themselves. Specifically, Montez contends:

1.  The State made an incorrect response to Montez's state habeas corpus argument that he did not match Stubblefield's initial description of the robber.

2.  Stubblefield lied when he testified as to his initial description of the robber.

3.  Stubblefield lied when he denied he had originally told the police the robber was a white male.

4.  One of the police officer's testimony regarding Montez's match to the description of the robber given by Stubblefield was incorrect.

5.  The evidence of the shirt found in the backseat with Montez was fabricated by the police.

6.  Stubblefield lied and his testimony was not supported.

7.  Stubblefield's testimony that none of the security cameras recorded anything was unreliable.

### 1.  Errors on State Habeas Corpus

In his first subpoint of error, petitioner complains the State made an incorrect argument during the state  habeas corpus proceedings. As discussed in sections IV.C.3 and IV.D.3 above, "infirmities in state habeas proceedings do not constitute grounds for federal habeas relief." *Moore,*

369 F.3d at 846 (quoting *Duff-Smith*, 973 F.2d at 1182).  Montez's complaints about errors that occurred during his state habeas corpus proceedings are not cognizable on federal habeas corpus review and should be denied.  *See id.*

### 2.  *Accusations of False Evidence and Testimony*

In his second, third, fourth, fifth, sixth, and seventh subpoints of error, Montez avers witness Stubblefield perjured himself throughout his testimony, Officer Taylor perjured himself, and Officer Sanders falsified the South Pole shirt found in the backseat floorboard next to petitioner.  To establish a constitutional violation based on perjured testimony, a habeas corpus petitioner must demonstrate (1) the testimony was actually false, (2) the prosecution knew the testimony was false, and (3) the testimony was material to the issue of petitioner's guilt.  *Little v. Butler*, 848 F.2d 73, 76 (5th Cir. 1988).

Evidence beyond a petitioner's bare allegations is necessary to establish testimony was perjured.  *Koch*, 907 F.2d at 531.  Additionally, a petitioner cannot rely merely upon contradictions in trial testimony to prove perjury.  *Id.*; *Little*, 848 F.2d at 76 (holding that inconsistencies in witness testimony are for the trier of fact to resolve and do not, without more, prove perjury).  Rather, a petitioner must offer some form of evidence supporting his claim that the testimony was false.  *Koch*, 907 F.2d at 531.

Montez attempts to rely upon inconsistencies in Officer Sanders's and Stubblefield's testimony to prove perjury.  To the extent there were any inconsistencies, they do not prove perjury.  *See Koch*, 907 F.2d at 531.  Like the Fifth Circuit in *Little*, this Court is not prepared to hold (based merely on petitioner's assertions) the testimonies of Stubblefield, Officer Taylor, and Officer Sanders were false.  *See Little*, 848 F.2d at 76.  Because Montez offers absolutely no evidence in

support of his arguments, they must fail.  *See id.*; *Koch*, 907 F.2d at 531.  Moreover, even if the testimony and evidence were false, Montez has failed to establish the prosecution knew of their falsity.  *See Little*, 848 F.2d at 76.  These grounds of error are without merit.

## H.  APPELLATE COURT REVIEW

In his tenth point of error, Montez complains the state intermediate appellate court erred by affirming his conviction.  Specifically, Montez contends,

1.     The record clearly shows Montez did not match the description of the robber given by Stubblefield.

2.     The record clearly shows the "alleged stolen shirt used as evidence by State [sic] was falsified evidence."  (*Memo*, pg. 43).

3.     The State failed to link Montez to the box cutter.

4.     Based on 1, 2, and 3, no evidence exists to support the elements of robbery, and the appellate court erred by affirming the conviction.

Regarding petitioner's first subpoint, in section IV.A.2 the Court discussed whether Montez matched the description of the robber given by Stubblefield.  As was concluded in that section, the record does not "clearly show" Montez did not match Stubblefield's description, as Montez has argued in his federal habeas corpus petition.  At most, there was conflicting testimony on whether Stubblefield described the robber as white or Hispanic.  (RR, vol. 3, pgs. 34, 54, 115, 139, 149).  There was also confusion about whether Montez could be described as white or Hispanic based on his complexion.  (RR, vol. 3, pgs. 81, 118).  The jury heard these conflicts in the testimony and decided the argument against Montez.  The state appellate court did not err by refusing to disturb the jury's holding.  *See Cyprian*, 197 F.3d at 740.  The first subpoint is without merit.

Regarding petitioner's second subpoint, in section IV.G.2 this Court discussed how there is **no** evidence indicating the tee shirt admitted into evidence as the one discovered in the floorboard

next to Montez was falsified by the police.  Montez's unsubstantiated allegation that the police created the tee shirt and the police officer who testified about discovering the tee shirt perjured himself is insufficient to call into question the constitutionality of his conviction.  *See Little*, 848 F.2d at 76; *See Ross*, 694 F.2d at 1011.  Petitioner has not demonstrated any error by the state appellate court, and the second subpoint is without merit

Regarding the third subpoint, in section IV.A.2 this Court discussed how petitioner was not discovered physically holding the box cutter when arrested.  Rather, the box cutter was in the seat pocket directly in front of where petitioner was sitting at the time of the stop.  (RR, vol. 3, pgs. 150, 153).  To the extent it was relevant to the robbery conviction, the jury clearly linked Montez to the box cutter even though it was not discovered in his physical possession.  Further, it could be argued that the box cutter was in petitioner's constructive possession, and it clearly was within his reach.  This Court will not question the jury's conclusion, and the appellate court did not err by doing likewise.  *See Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789.  The third subpoint is without merit.

Regarding petitioner's fourth subpoint, this Court does not sit as a "super" state supreme court to review error under state law.  *See Wood v. Quarterman*, 503 F.3d 408, 414 (5th Cir. 2007).  The only inquiry relevant to a federal habeas corpus proceeding is whether an error of constitutional dimension occurred.  As discussed in section IV.A.2, the evidence was sufficient.  *See Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789.  The fourth subpoint is without merit.

V.
RECOMMENDATION

Petitioner has failed to present any meritorious claim warranting federal habeas corpus relief. Therefore, it is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Petition for a Writ of Habeas Corpus by a Person in State Custody filed

by petitioner DEREK WAYNE MONTEZ be DENIED.

VI.
INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 27th day of January, 2012.


CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE


**\* NOTICE OF RIGHT TO OBJECT \***

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).